# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CHRISTINE MCGOVERAN, JOSEPH VALENTINE, and AMELIA RODRIGUEZ, on behalf of themselves and all other persons similarly situated, known and unknown,<br><br>Plaintiffs,<br><br>v.<br><br>AMAZON WEB SERVICES, INC. and PINDROP SECURITY, INC.,<br><br>Defendants. | Case No. 3:20-cv-00031-NJR<br><br><br>Hon. Nancy J. Rosenstengel |

**DEFENDANT AMAZON WEB SERVICES, INC.'S MOTION TO DISMISS UNDER RULES 12(b)(2) AND 12(b)(6) AND MEMORANDUM OF LAW IN SUPPORT**

Plaintiffs Christine McGoveran, Joseph Valentine, and Amelia Rodriguez purport to bring a class action against Amazon Web Services, Inc. ("AWS") for alleged violations of the Illinois' Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.* ("BIPA").

The Court should dismiss Plaintiffs' Complaint pursuant to Rule 12(b)(2) and 12(b)(6) for at least the following five reasons:

*First*, the Court lacks personal jurisdiction over AWS because AWS is not "at home" in Illinois, and Plaintiffs fail plausibly to plead facts to support specific jurisdiction.

*Second*, BIPA's financial institution exception precludes all of Plaintiffs' claims. Plaintiffs' alleged claims under BIPA stem from calls made to John Hancock—a "financial institution" exempt from liability under 740 ILCS 14/25(c). AWS' alleged liability would be entirely contingent on the actions of John Hancock, an exempted entity.

*Third*, Plaintiffs' BIPA Section 15(b) claim should be dismissed with prejudice for failure to state a claim as a matter of law. Plaintiffs allege that AWS is a third-party provider of cloud storage services. Plaintiffs do not allege any direct relationship with AWS. BIPA's plain language (and common sense) make clear that the Illinois Legislature did not require third-party vendors, like AWS, to provide written notice or obtain consent pursuant to Section 15(b) or subject such third-party vendors to liability.

*Fourth*, Plaintiffs' BIPA Section 15(a)–(e) claims should be dismissed for failure to state a claim because Plaintiffs fail to plead specific facts to support an allegation that AWS possesses any "biometric identifiers" or "biometric information." Furthermore, this Court may take judicial notice that AWS, in fact, has publicly available data privacy policies.

*Finally*, Plaintiffs fail plausibly to plead negligence, recklessness, or intent and therefore fail to plead an actionable BIPA violation as a matter of law.

For all these reasons, Plaintiffs' claims against AWS should be dismissed with prejudice.

## THE COMPLAINT'S ALLEGATIONS

### A.     The Parties.

Plaintiffs are residents and citizens of the State of Illinois.  (ECF No. 1-1, Compl. ¶¶ 21–23.)  Plaintiffs allege that they "called John Hancock customer service representatives and/or call center(s) on numerous occasions" and that the "call center(s) use Amazon Connect with Pindrop biometric voiceprint authentication" which "collected, captured, obtained, and possessed the biometric identifiers of Plaintiffs."  (*Id.* at ¶¶ 67, 71, 77.)  Non-party John Hancock "is one of the nation's leading financial services companies, providing a broad array of insurance and investment products and services to retail and institutional customers, primarily in North America."  *See* John Hancock Annual Report (Form 10-K), at 4 (available at https://www.sec.gov/Archives/edgar/data/736260/000092701603001209/d10k.htm).

Pindrop Security, Inc. is a Delaware corporation.  (*Id.* at ¶ 27.)  Plaintiffs allege that Pindrop offers "voice biometric services" that "are used by call centers and customer service personnel to confirm the identity of individual callers.  (*Id.* at ¶¶ 39–40.)

AWS is a Delaware corporation.  (*Id.* at ¶ 25.)  Plaintiffs allege that AWS "offers cloud storage services, offering its customers the ability to store their data, access their data remotely, and create backup copies of their data."  (*Id.* at ¶ 45.)  Plaintiffs allege "incoming calls to call centers, such as those Plaintiffs contacted, [are] sent to Pindrop for processing. The output from that processing is returned to AWS' servers."  (*Id.* at ¶ 59.)

### B.     Causes of Action.

Plaintiffs allege, in conclusory fashion, that AWS violated BIPA "by collecting, possessing, redisclosing, profiting from, and failing to safeguard their biometric identifiers and biometric information."  (*Id.* at ¶ 1.)

Based on these conclusory allegations, Plaintiffs assert all five causes of action potentially available under BIPA. Plaintiffs assert that AWS violated BIPA: (1) Section 15(a) by not "creating and following a written policy, made available to the public, establishing and following a retention schedule and destruction guidelines for their possession of biometric identifiers and information," (*id.* at ¶ 90.); (2) Section 15(b) "by capturing, collecting, and obtaining Plaintiffs' and Class members' biometric identifiers and biometric information . . . without first obtaining informed written consent" (*id.* ¶¶ 95–97.); (3) Section 15(c) "by profiting from the possession of Plaintiffs' and Class members' biometric identifiers and biometric information," (*id.* at ¶ 102.); (4) Section 15(d) "by disclosing, redisclosing, and disseminating Plaintiffs' and Class members' biometric identifiers and biometric information . . . without consent," (*id.* at ¶ 107.); and (5) Section 15(e) by "failing to store, transmit, and protect from disclosure these biometric identifiers and biometric information while using a reasonable standard of care within Defendants' respective industries." (*Id.* at ¶ 112.)

## ARGUMENT

**I. THIS COURT SHOULD DISMISS PLAINTIFFS' COMPLAINT FOR LACK OF PERSONAL JURISDICTION.**

Courts may exercise personal jurisdiction over a defendant only when doing so comports with due process. *Bristol Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1779 (2017). As constrained by due process, personal jurisdiction comes in two shapes: general and specific. *Id.* at 1779–80. General (all-purpose) jurisdiction exists only when the defendant is "at home" in the forum. *Daimler AG v. Bauman*, 571 U.S. 117, 137–39 (2014). Courts in states where a defendant is at home may hear any claims against that defendant. *Id.* at 138. Specific (case-linked) jurisdiction exists only when the plaintiff's specific claims "arise out of or relate to the defendant's contacts with the forum." *Bristol-Myers*, 137 S. Ct. at 1780. That is, for specific jurisdiction to

exist, the defendant's own "suit-related conduct must create a substantial connection with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014).

Plaintiffs fail to meet their burden to make a *prima facie* showing of personal jurisdiction. *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014). Plaintiffs do not allege any facts that would support this Court's exercise of general or specific jurisdiction over AWS. Thus, their claims against AWS must be dismissed pursuant to Rule 12(b)(2).

### A.    This Court Lacks General Jurisdiction Over AWS.

General jurisdiction exists only where the defendant is "at home." *Daimler*, 571 U.S. at 137–39. A corporation is not at home in every state in which it merely "engages in a substantial, continuous, and systematic course of business." *Id.* at 138. Rather, in all but "exceptional case[s]"—such as when a corporation temporarily moves its operations during war, *see BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558–59 (2017)—a corporation's "home" is limited to its "place of incorporation and its principal place of business." *Daimler*, 571 U.S. at 137–38 & n.19. "Those affiliations have the virtue of being unique ... [and] easily ascertainable." *Id.* at 137.

Plaintiffs do not allege that AWS is subject to this Court's general jurisdiction, and it is not. AWS, a Delaware corporation with its principal place of business in Washington, is not "at home" in Illinois.

### B.    This Court Lacks Specific Jurisdiction Over AWS.

For specific personal jurisdiction to exist, a plaintiff's suit must arise out of or relate to the defendant's contacts with the forum state. *Bristol-Myers*, 137 S. Ct. at 1780. "[T]here must be an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Id.* (citation omitted). Specific jurisdiction, then, is "confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Id.* (citation omitted).

Plaintiffs do not allege contacts by AWS with Illinois connected to Plaintiffs' claims. At most, Plaintiffs claim **non-party John Hancock's** conduct was directed at Illinois. (Compl. ¶¶ 67–70.) Plaintiffs do *not* allege that AWS engaged in conduct in Illinois, nor that AWS engaged in conduct directed toward Plaintiffs in Illinois. Plaintiffs merely allege that AWS is a vendor used by a ***third party*** they contacted. Plaintiffs cannot use a third party's alleged contacts with the forum to establish personal jurisdiction over AWS. *See, e.g.*, *Greene v. Karpeles*, No. 14 C 1437, 2019 WL 1125796, at *5 (N.D. Ill. Mar. 12, 2019) ("[T]he relation between the defendant and the forum must arise out of contacts that the defendant *himself* creates with the forum. In other words, the plaintiff cannot be the only link between the defendant and the forum.") (internal quotation marks and citations omitted).

As publicly available documents demonstrate, AWS' U.S. data centers are located in Virginia, Ohio, California, and Oregon. (*See* "Using AWS in the Context of Common Privacy & Data Protection Considerations," available at https://d1.awsstatic.com/whitepapers/compliance/Using_AWS_in_the_context_of_Common_Privacy_and_Data_Protection_Considerations.pdf, attached as **Exhibit A**).[1] AWS' data centers are not located in Illinois. Plaintiffs' claims against AWS should be dismissed under Rule 12(b)(2) for lack of personal jurisdiction.

---

[1] The Court may consider materials outside the Complaint in ruling on AWS' motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2). *See, e.g.*, *Tower Commc'ns Expert, LLC v. TSC Constr., LLC*, No. 18 C 2903, 2018 WL 5624268, at *4 (N.D. Ill. Oct. 30, 2018) ("The parties may submit affidavits to support their arguments for personal jurisdiction, and 'once the defendant has submitted affidavits or other evidence in opposition to the exercise of jurisdiction, the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction.'") (quoting *Purdue Research Found. v. Sanofi Synthelabo, S.A.*, 338 F.3d 773, 783 (7th Cir. 2003)).

## II. EACH OF PLAINTIFFS' CLAIMS SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM.

Plaintiffs fail to state a claim against AWS. Rule 12(b)(6) requires dismissal when a plaintiff "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To plead a viable cause of action, the allegations must transcend the "speculative," "conceivable," and "possible" and must "state a claim that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–57, 566–67, 570 (2007). The Court must disregard "legal conclusions" and "conclusory statements" and must scrutinize factual allegations to ensure that they are more than "merely consistent with a defendant's liability." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–79 (2009).

### A. BIPA's Financial Institution Exception Precludes All of Plaintiffs' Claims.

BIPA explicitly does not apply "*in any manner*" to "a financial institution or an affiliate of a financial institution that is subject to Title V of the federal Gramm-Leach Bliley Act of 1999 and the rules promulgated thereunder." 740 ILCS 14/25(c) (emphasis added). The Gramm-Leach Bliley Act ("GLBA") applies to financial institutions—companies that offer consumers financial products or services like loans, financial or investment advice, or insurance. 15 U.S.C. §§ 6801, 6809. The GLBA exception to BIPA precludes AWS's liability here.

Plaintiffs allege that their biometric information and biometric identifiers are being collected and stored when they call John Hancock. (Compl. ¶¶ 68–73.) John Hancock is a financial institution subject to the GLBA. *See* John Hancock Annual Report (Form 10-K), at 1 ("John Hancock Financial Services, Inc. . . . is one of the nation's leading financial services companies, providing a broad array of insurance and investment products and services to retail and institutional customers"), 33 (describing "federal initiatives" with an "impact on [John Hancock's] business," including "the Gramm-Leach-Bliley Act of 1999").

Because BIPA does not apply to John Hancock—the actual entity with which Plaintiffs communicated — *"in any manner"*, BIPA, likewise, does not apply to AWS.  As indicated by a source cited in Plaintiffs' Complaint (Compl. n.13), Pindrop's security services, in connection with those offered by AWS, were implemented at John Hancock's insistence to protect its consumer's financial accounts and information—the entire point of the Gramm-Leach-Bliley Act and BIPA exception.  *See* 740 ILCS 14/5(a) ("The use of biometrics is growing in the business and security screening sectors and appears to promise streamlined financial transactions and security screenings."); *id.* at (b) ("Major national corporations have selected the City of Chicago and other locations in this State as pilot testing sites for new applications of biometric-facilitated financial transactions, including finger-scan technologies at grocery stores, gas stations, and school cafeterias.").  AWS's alleged liability is entirely contingent on the actions of the exempted entity.  Plaintiffs cannot circumvent the GLBA exception by attacking the vendors affiliated with an exempted entity.  BIPA expressly does not apply to exempted entity John Hancock "in any manner," *see Id.* at 14/25(c); thus,  logically, BIPA cannot apply to a third-party vendor acting on that exempted entity's behalf.  Accordingly, this Court should dismiss Plaintiffs' Complaint in its entirety for failure to state a claim.

        **B.**      **As a Third-Party Provider, AWS is Not Subject to BIPA, and Plaintiffs' Section 15(b) Claim Against AWS Should Be Dismissed with Prejudice.**

Plaintiffs allege that AWS is a third-party provider of services with no relationship with Plaintiffs (Compl. ¶ 71).  As a third-party provider, AWS is not subject to BIPA's written notice and consent requirements as a matter of law.  *Aisha Namuwonge v. Kronos, Inc.,* No. 1:19-cv-03239, at 7–8 (N.D. Ill. Nov. 22, 2019) (attached as **Exhibit B**).

Section 15(b) imposes certain preconditions with which private entities must comply before they can collect or otherwise obtain an individual's biometric information.  740 ILCS

14/15(b).  These preconditions include: (1) informing the individual "in writing that a biometric identifier or biometric information is being collected or stored;" (2) informing the individual or her legally authorized representative "in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used;" (3) and receiving "a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative." *Id.*

However, unlike BIPA Sections (a), (c), (d), and (e), which use the passive term "in possession," Section 15(b) speaks in *active* verbs—"collect, capture, purchase, receive," and "obtain." *Compare* 740 ILCS 14/15(a), (c), (d), (e) *with* 740 ILCS 14/15(b).  Under BIPA's plain language, the legislature did not impose Section 15(b)'s requirements on entities that merely "possess[]" biometric information; rather, Section 15(b)'s requirements apply to entities with an active role.  740 ILCS 14/15(b).  If the legislature intended to bring all private entities who merely "possess[]" biometrics within Section 15(b)'s purview, it could have explicitly done so—as it did in Sections 15(a), (c), (d), and (e).  *See* 740 ILCS 14/15(a), (c), (d), (e); *see also Dana Tank Container, Inc. v. Human Rights Comm'n*, 687 N.E.2d 102, 104 (Ill. App. Ct. 1997) ("Where the legislature uses certain words in one instance and different words in another, it intended different results."); *accord, In re D.W.*, 827 N.E.2d 466, 479 (Ill. 2005).  But it did not.

In light of this textual difference, courts consistently have held that Section 15(b) does not apply to third-party service providers like AWS.  The recent decision in *Aisha Namuwonge v. Kronos, Inc.* is instructive.  No. 1:19-cv-03239, at 7–8 (N.D. Ill. Nov. 22, 2019) (attached as **Exhibit B**).  In *Kronos*, the court dismissed Section 15(b) claims against Kronos, Inc., an alleged third-party timekeeping vendor.  Judge Sharon J. Coleman held that "there is a difference between *possessing* and *collecting* biometric information" and that the "allegations do not plausibly allege"

that Kronos—a third-party vendor who merely provided a system to collect biometric information—"collected, captured, or otherwise obtained" plaintiffs' biometric information. *Id.* at 8 (emphasis added).

Similarly, in *Cameron v. Polar Tech Indus., Inc. & ADP, LLC*, No. 2019-CH-000013, at 29–36 (DeKalb Cty. Ill. Cir. Ct. Aug. 23, 2019) (attached as **Exhibit C**), Judge Bradley J. Waller of Dekalb County dismissed a BIPA Section 15(b) claim against a third party with prejudice. Judge Waller gave effect to the plain language of the statute and held that it was the employer—not ADP as a third-party vendor—that must provide notice and receive consent under Section 15(b). *Id.* at 33–34  ("The statute is fairly new, as we all know, but my view is that it applies when it is an employment situation, which is the allegation here, that it's the employer's responsibility, not a third party, and I'm going to grant the 2-615 motion with respect to 15(b), with prejudice.").

Furthermore, Judge David B. Atkins of the Cook County Chancery Division also recently dismissed Section 15(a), (b), (c), and (d) claims against ADP. *Bernal v. ADP, LLC*, No. 2017-CH-12364, at 2–3 (Cook Cty. Ill. Cir. Ct. Aug. 23, 2019) (attached as **Exhibit D**).  Regarding Section 15(b), Judge Atkins noted that "language included by the legislature differs from the language included in the other subsections and suggests that the legislature intended for possession alone to not be enough to make an entity subject to § 15(b)." *Id.* at 2.  To that end, Section 15(b)'s "requirement that the private entity whose actions the subsection is meant to regulate must receive a 'written release' … does suggest that the legislature did not intend for the subsection to apply to a third party entity[.]" *Id.*

Most recently, Judge Rebecca R. Pallmeyer dismissed Section 15 (a), (b), and (c) claims against a third party provider of automated medication dispensing systems that contain a fingerprint device. *Heard v. Becton, Dickinson & Co.* No. 1:19-cv-04158, at 7 (N.D. Ill. Feb. 24,

2020) (attached as **Exhibit E**).  Regarding Section 15(b), Judge Pallmeyer held "that for Section 15(b)'s requirements to apply, an entity must at a minimum, *take an active step* to 'collect, capture, purchase, receive through trade, or otherwise obtain' biometric data." *Id.* (emphasis added).  While the complaint alleged that the defendants had "Systematically and automatically collected" biometric data, the court held the "allegations merely parrot the BIPA's statutory language." *Id.* (internal marks omitted).

Following this authority, this Court should dismiss Plaintiffs' Section 15(b) claim against AWS, a passive third party that is merely alleged to offer "its customers the ability to store their data, access their data remotely, and create backup copies of data." (Compl. ¶ 45.)  Plaintiffs allege that while calling **non-party John Hancock**—not AWS—Plaintiffs' biometrics were processed and stored by Amazon Connect and Pindrop.  (Compl. ¶¶ 67, 95.)  Key here, Plaintiffs allege that their biometrics were collected "[b]ecause John Hancock's call centers(s) use this technology. . ."  (Compl. ¶ 72.)  AWS' *only* alleged connection is that it purportedly "obtains and stores biometric identifiers and biometric information *for its customers* [i.e., John Hancock]." (Compl. ¶ 49) (emphasis added).  Accordingly, Plaintiffs fail to state a BIPA Section 15(b) claim against AWS as a matter of law.

Construing Section 15(b) to impose notice and release obligations on third-party service providers like AWS would yield absurd results and render BIPA unworkable.  Plaintiffs (and any Class member) would need to be asked to provide written consent (at least) three times and from (at least) three separate entities—John Hancock, then Pindrop, then AWS—to ensure compliance with BIPA.  But "to read BIPA as requiring that a third party provider of the biometric timeclock technology, without any direct relationship with [plaintiffs], obtain written releases from said

[plaintiffs] would be unquestionably not only inconvenient but arguably absurd." *Bernal,* No. 2017-CH-12364, at 2–3.

This is particularly absurd where John Hancock is expressly exempted from liability under BIPA.  Such an expansive web of potential liability and compliance costs would undermine BIPA's aim of realizing the "promise" of biometric technologies.  *See* 740 ILCS 14/5.  *See Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575 (1982) ("[I]nterpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available."); *People v. Hanna*, 800 N.E.2d 1201, 1207–09 (Ill. 2003) (rejecting statutory construction leading to "absurd result" that regulated entity would be unable to comply with the statute's requirements).

As a third-party, cloud-storage provider with no direct connection to Plaintiffs, AWS is not liable under BIPA Section 15(b) as a matter of law.  This Court should dismiss Plaintiffs' Section 15(b) claim (Count II) with prejudice.

### C.     Plaintiffs Fail to State a Section 15(a) "Public Policy" Claim against AWS.

Section 15(a) requires that a private entity in possession of biometric information "develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers."  740 ILCS 14/15(a).  Plaintiffs assert that AWS possessed biometric information "without creating and following a written policy, made available to the public, establishing and following a retention schedule and distribution guidelines" in violation of Section 15(a) of BIPA.  (Compl. ¶ 90.)

However, Plaintiffs fail to allege facts to support their conclusory allegation that AWS possesses "biometric identifiers."  (Compl. ¶ 49.)  Plaintiffs never allege what data or information supposedly was collected, the context in which that information was collected, or how AWS allegedly obtained the information.  Given that Plaintiffs fail to allege facts supporting the

allegation that AWS possesses biometric identifiers, Plaintiffs fail plausibly to plead that AWS is under any obligation to establish or make publicly available a retention schedule for the destruction of such biometric identifiers. *Twombly*, 550 U.S. at 555–57, 566–67, 570 .

In *Heard*, the court found that the plaintiff did "not adequately plea[d] 'possession' because he fails to allege that [defendant] exercised *any* dominion or control over [his] biometric data." *Head v. Becton, Dickinson & Co.* No. 1:19-cv-04158, at 10 (N.D. Ill. Feb. 24, 2020). Notably, plaintiff did allege that "the hospitals required [plaintiff] to scan his fingerprint into Pyxis devices, [and that defendant] 'subsequently stored [plaintiff's] fingerprint data in their systems.'" *Id.* The court found this insufficient because "[t]his allegation does not plead that [defendant] exercised any form of control over the data or that it held the data 'at [its] disposal.'" *Id.* The court was persuaded by the definition of possession articulated in *People v. Ward*, where the Illinois Supreme Court held that "possession, as ordinarily understood, occurs when a person has or takes control of the subject property or holds the property at his or her disposal." 215 Ill.2d 317, 325, 830 N.E.2d 556, 560, 249 Ill. Dec. 144, 148 (2005). AWS customers retain ownership and control of their content.

This Court may take judicial notice of AWS' publicly available agreements and policies regarding data privacy.[2] Pursuant to those policies, AWS customers retain ownership and control of their content. AWS customers also retain complete control over when and whether AWS

---

[2] The AWS Customer Agreement, AWS' "Data Privacy FAQ," and AWS' guide on "Using AWS in the Context of Common Privacy & Data Protection Considerations" are matters of public record and therefore may be considered by this Court in ruling on AWS' 12(b)(6) Motion to Dismiss. *See, e.g.*, *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (courts "ordinarily examine . . . matters of which the court may take judicial notice" when ruling on a 12(b)(6) motion); *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997) (district courts may "take judicial notice of matters of public record without converting a motion for failure to state a claim into a motion for summary judgment.").

continues to host their data at all.  Any biometric information collected by AWS' commercial customer is that customer's content, as defined under the AWS Customer Agreement.  *See* AWS Customer Agreement at 17, § 14, available at https://aws.amazon.com/agreement/ (last accessed Mar. 2, 2020), attached as **Exhibit F** ("'Your content' means Content that you or any End User transfers to us for processing, storage or hosting by the Services in connection with your AWS account and any computational results that you or any End User derive from the foregoing through their use of the Services.").  *See id.* at 2, § 3.2 ("You may specify the AWS regions in which Your Content will be stored. You consent to the storage of Your Content in, and transfer of Your Content into, the AWS regions you select. We will not access or use Your Content except as necessary to maintain or provide the Service Offerings, or as necessary to comply with the law or a binding order of a governmental body.").

AWS' "Data Privacy FAQ" emphasize, "[a]s a customer, *you maintain ownership of your content*, and you select which AWS services can process, store, and host your content. We do not access or use your content for any purpose without your consent."  (Data Privacy FAQ, available at https://aws.amazon.com/compliance/data-privacy-faq/) (last accessed Mar. 2, 2020), attached as **Exhibit G**, at 2) (emphasis added).  "Using AWS in the Context of Common Privacy & Data Protection Considerations" further provides that "*[c]ustomers retain ownership and control of their content* when using AWS services," and that

> AWS does not collect personal data from individuals whose personal data is included in content a customer stores or processes using AWS, and *AWS has no contact with those individuals*. Therefore, AWS is not required and is unable in the circumstances to communicate with the relevant individuals. AWS only uses customer content to provide the AWS services selected by each customer to that customer and does not use customer content for any other purposes.

(**Exhibit A** at 3, 14) (emphasis added).  Thus, publicly available documents demonstrate that AWS is in compliance with Section 15(a).  This Court should dismiss Plaintiffs' Section 15(a) claim for failure to state a claim (Count I).

### D. Plaintiffs Fail to State a Claim for Relief against AWS under BIPA Sections 15(c)–(e).

Plaintiffs fail to satisfy *Twombly* because they "merely parrot statutory language of the claims that [they are] pleading … rather than providing some ***specific facts*** to ground those legal claims."  *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (emphasis added).  This Court need not accept as true legal conclusions couched as factual allegations.  *Jackson v. Bank of Am. Corp.*, 711 F.3d 788, 794 (7th Cir. 2013) ("[C]ourts are not bound to accept as true a legal conclusion couched as a factual allegation." (*quoting Twombly*, 550 U.S. at 555)).

Section 15(c) mandates that a private entity may not "sell, lease, trade, or otherwise profit from a person's or a customer's biometric identifier or biometric information." 740 ILCS 14/15(c). Plaintiffs fail to allege any facts to support their conclusory allegation that AWS possesses or profits from "biometric identifiers."  Whereas Plaintiffs allege that "Pindrop charges fees for and profits from voiceprint products and services," (Compl. ¶ 44.), in stark contrast, Plaintiffs do not allege that AWS charges fees or profits from customers' biometric identifiers.  Rather, Plaintiffs assert that AWS "profits from its Amazon Connect services" and "from offering ***Pindrop's*** voiceprint services. . ."  (Compl. ¶¶ 53–54.) (emphasis added).  Given that Plaintiffs fail to allege facts that AWS profits from a person's biometric identifiers or information, this Court should dismiss Plaintiffs' Section 15(c) claim (Count III).  *See Bernal*, No. 2017-CH-12364, at 4 (dismissing Section 15(c) claim for failure to state a claim where Complaint did "not contain any allegation that Defendant sold, leased, traded, or otherwise profited from anyone's biometric information.")

Section 15(d) requires that a private entity may not "disclose, redisclose, or otherwise disseminate a person's or a customer's biometric identifier or biometric information[.]" 740 ILCS 14/15(d). Plaintiffs rely on a singular conclusory allegation that both Defendants disclosed, rediclosed *and* disseminated Plaintiffs' and Class members' biometric identifiers and information. (Compl. ¶ 107.) However, Plaintiffs again fail to allege what biometric identifiers and information AWS allegedly disclosed, redisclosed, and/or disseminated or how or to whom AWS allegedly disclosed said biometric identifiers and information. Plaintiffs thus fail to allege "specifics related to any [unidentified] disclosure." *See Bernal*, No. 2017-CH-12364, at 4–5 (concluding single statement that defendant's technology allowed dissemination of Plaintiff's biometric information "f[e]ll short of sufficient factual pleading" and dismissing claim); *Namuwonge v. Kronos, Inc.*, No. 1:19-CV-03239, 2019 WL 6253807, at *4 (N.D. Ill. Nov. 22, 2019) (dismissing Section 15(d) claim where plaintiff failed to allege "specifics related to any disclosure"); *Head v. Becton, Dickinson & Co.* No. 1:19-cv-04158, at 12 (N.D. Ill. Feb. 24, 2020) (dismissing Section 15(d) claim where plaintiff's "[c]omplaint contains no allegations of fact."). Accordingly, this Court should dismiss Plaintiffs' Section 15(d) claim (Count IV).

Plaintiffs likewise fail to allege facts to support their claim that AWS violated Section 15(e). Section 15(e) requires that a private entity must "store, transmit, and protect from disclosure all biometric identifiers and biometric information" using (1) a reasonable standard of care within the private entity's industry, and (2) in a manner that is the same as or more protective than the manner in which the entity stores, transmits, and protects other confidential and sensitive information. 740 ILCS 14/15(d). Plaintiffs do not identify the standard of care allegedly applicable to AWS (and other private entities in the same industry), nor do Plaintiffs allege any facts as to the manner in which AWS stores, transmits, or protects confidential and sensitive

information, or how AWS allegedly failed to meet this unidentified standard of care. Given that Plaintiffs' allegations are "void of any facts" regarding the care taken in storing, transmitting, or protecting any alleged data, this Court should dismiss Plaintiffs' Section 15(e) claim (Count V). *Bernal*, No. 2017-CH-12364, at 4–5; *see also Namuwonge*, 2019 WL 6253807 at *4

### E.   Plaintiffs Fail to Plead Negligence, Recklessness, or Intent.

Plaintiffs fail to plead negligence, recklessness, or intent and therefore fail to plead an actionable BIPA violation as a matter of law. BIPA "only subjects violators to statutory damages if there is negligence or willfulness." *Rivera v. Google Inc.*, 238 F. Supp. 3d 1088, 1104 (N.D. Ill. 2017) (citing 740 ILCS 14/20). Specifically, BIPA's statutory damages provision provides:

> A prevailing party may recover for each violation … against a private entity that ***negligently*** violates a provision of this Act, liquidated damages of $1,000 or actual damages, whichever is greater; against a private entity that ***intentionally or recklessly*** violates a provision of this Act, liquidated damages of $5,000 or actual damages, whichever is greater.

740 ILCS 14/20(1)–(2) (emphasis added). In other words, not every violation of BIPA is actionable. Rather, Plaintiffs must allege (and eventually prove) more than a mere violation—they must show that AWS acted ***negligently***, ***recklessly***, or ***intentionally*** in violating BIPA. *See id.*

Allowing Plaintiffs to meet their pleading obligations related to alleged negligence, recklessness, or intent by simply alleging a mere violation would render superfluous those terms in the statute. *See People v. Trainor*, 752 N.E.2d 1055, 1063 (Ill. 2001) (statutory sections must be read "in conjunction with one another and their language so construed as to make them harmonious and consistent" and "[t]heir words cannot be read in a fashion that would render other words or phrases, meaningless, redundant, or superfluous") (citations omitted). Because there is a difference between a BIPA violation and an actionable BIPA violation, Plaintiffs must plead culpability.

Here, Plaintiffs fail to plead facts suggesting that AWS acted negligently, recklessly, or intentionally. *See Rogers v. CSX Intermodal Terminals, Inc.*, No. 1:19 C 2937, 2019 WL 4201570 (N.D. Ill. Sept. 5, 2019) (dismissing intentional or reckless conduct claim premised on "conclusory statement of . . . intent"). Plaintiffs merely state that "failure to adhere to the statutory requirements" of BIPA constitutes negligence and recklessness. (Compl. ¶¶ 91, 92, 98, 99, 103, 104, 108, 109.) Plaintiffs have not met the notice pleading standard.

## CONCLUSION

Because the Court lacks personal jurisdiction over AWS and because Plaintiffs have failed to state a claim against AWS under BIPA, Plaintiffs' Complaint should be dismissed with prejudice in its entirety, and Plaintiffs' request for class certification should be denied.

Dated: March 2, 2020				Respectfully submitted,

**AMAZON WEB SERVICES, INC.**


By: */s/ Elizabeth B. Herrington*
     By Its Attorney

   Elizabeth B. Herrington
   MORGAN, LEWIS & BOCKIUS LLP
   77 West Wacker Drive
   Chicago, IL  60601-5094
   Telephone: +1.312.324.1000
   Facsimile: +1.312.324.1001
   beth.herrington@morganlewis.com

## **CERTIFICATE OF SERVICE**

I, Elizabeth B. Herrington, hereby certify that on this 2nd day of March, 2020, I caused a copy of the foregoing DEFENDANT AMAZON WEB SERVICES, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS to be served upon all counsel of record via the Court's CM/ECF system.

 

        */s/ Elizabeth B. Herrington*
        Elizabeth B. Herrington