**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| CHRISTINE MCGOVERAN, JOSEPH VALENTINE, and AMELIA RODRIGUEZ, on behalf of themselves and all other persons similarly situated, known and unknown, )))))  | |
| Plaintiffs, )) | Case No. 20-cv-31-NJR |
| v. ) | Hon. Nancy J. Rosenstengel |
| AMAZON WEB SERVICES, INC., and PINDROP SECURITY, INC., )))) | |
| Defendants. ) | |

**PLAINTIFFS' OPPOSITION TO DEFENDANT
AMAZON WEB SERVICES, INC.'S MOTION TO DISMISS
<u>UNDER FEDERAL RULES OF CIVIL PROCEDURE 12(B)(2) AND 12(B)(6)</u>**

## **TABLE OF CONTENTS**

Table of Contents .................................................................................................................. ii

Table of Authorities ............................................................................................................. iii

Background ............................................................................................................................ 1

    A.   Defendant Amazon Web Services, Inc. ................................................................... 1

    B.   AWS's Collection, Possession, and Use of Voice Biometric Data ....................... 2

    C.   Plaintiffs Christine McGoveran, Joseph Valentine, and Amelia Rodriguez ................... 3

Argument ............................................................................................................................... 3

    I.   AWS Is Subject to Personal Jurisdiction in This Court ................................................... 4

        A.   AWS Has Consented to This Court's Personal Jurisdiction ....................... 4

        B.   AWS Is Subject to Personal Jurisdiction in this Court Irrespective of Its Consent ................................................................................................................. 5

    II.   Plaintiffs' Allegations Demonstrate That AWS Violated BIPA ......................... 9

        A.   The Complaint Adequately Alleges That AWS Obtains Voice Biometric Data .... 10

        B.   The Complaint Adequately Alleges That AWS Possesses Voice Biometric Data ................................................................................................................. 12

        C.   The Complaint Adequately Alleges That AWS Profits from and Disseminates Voice Biometric Data and Violates the Applicable Standard of Care ................... 13

        D.   The Complaint Adequately Alleges That AWS Failed to Develop a Public, Written Policy Concerning the Destruction and Retention of Biometric Data ....... 15

    III.   There Is No Legal Basis for AWS to Evade Plaintiffs' Claims ....................... 17

        A.   AWS Is Not a Financial Institution Exempt from BIPA ......................... 17

        B.   AWS's Argument That Third-Party Service Providers Are Exempt from BIPA Is Contrary to BIPA's Plain Language and Entirely Unsupported ........................ 18

        C.   AWS's Argument That Plaintiffs Have Inadequately Pleaded AWS's State of Mind Is Legally Incorrect ................................................................................. 19

Conclusion ............................................................................................................................ 20

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Adam v. Saenger*,
   303 U.S. 59 (1938) ................................................................................................ 4

*Allied Van Lines, Inc. v. Aaron Transfer & Storage, Inc.*,
   200 F. Supp. 2d 941 (N.D. Ill. 2002) ................................................................ 5

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................................ 9

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ...................................................................................... 9, 10

*Bernal v. ADP, LLC*,
   No. 2017-12364-DBA, 2019 WL 5028609 (Ill. Cir. Ct. Aug. 23, 2019) .......................... 13, 19

*Bryant v. Compass Group USA, Inc.*,
   958 F.3d 617 (7th Cir. 2020) ...................................................................... 18, 19

*Cameron v. Polar Tech Indus., Inc. & ADP, LLC*,
   No. 2019-CH-000013-BW, Doc. 49-3 (DeKalb Cty. Ill. Cir. Ct. Aug. 23, 2019) ................ 19

*Cole v. Milwaukee Area Tech. Coll. Dist.*,
   634 F.3d 901 (7th Cir. 2011) ............................................................................ 9

*Curry v. Revolution Labs., LLC*,
   949 F.3d 385 (7th Cir. 2020) ........................................................................ 6, 8

*Derse Inc. v. Haas Outdoors Inc.*,
   No. 09-97, 2011 WL 554060 (E.D. Wis. Feb. 4, 2011) ...................................... 4

*Express Scripts, Inc. v. Apothecary Shoppe, Inc.*,
   No. 12-01035-AGF, 2013 WL 5491873 (E.D. Mo. Sept. 30, 2013) .................. 4

*Felland v. Clifton*,
   682 F.3d 665 (7th Cir. 2012) ........................................................................ 6, 9

*Felty v. Driver Sols., LLC*,
   No. 13-2818-CPK, 2013 WL 5835712 (N.D. Ill. Oct. 30, 2013) ...................... 16

*Gen. Elec. Capital Corp., v. Lease Resolution Corp.*,
   128 F.3d 1074 (7th Cir. 1997) ........................................................................ 15

*German Am. Fin. Advisors & Tr. Co. v. Rigsby*,
   623 Fed. Appx. 806 (7th Cir. 2015) ................................................................ 4

*Gibson v. City of Chi.*,
   910 F.2d 1510 (7th Cir. 1990) .......................................................................... 9

*Greene v. Karpeles*,
   No. 14-1437, 2019 WL 1125796 (N.D. Ill. Mar. 12, 2019) .............................. 8

*Heard v. Becton, Dickinson & Co.,*
  No. 19-4158-RRP, 2020 WL 887460 (N.D. Ill. Feb. 24, 2020) ...................... 11, 12, 13, 14, 19

*In re Asbestos Products Liab. Litig. (No. VI),*
  921 F.3d 98 (3d Cir. 2019) ...................................................................................... 4

*In re Broiler Chicken Antitrust Litig.,*
  290 F. Supp. 3d 772 (N.D. Ill. 2017) ..................................................................... 15

*In re Plasma-Derivative Protein Therapies Antitrust Litig.,*
  764 F. Supp. 2d 991 (N.D. Ill. 2011) ..................................................................... 15

*In re Syngenta Mass Tort Actions,*
  No. 15-01121, 2017 WL 713694 (S.D. Ill. Feb. 20, 2017) ......................................... 4

*Johnson v. Levine,*
  No. 09-0994, 2010 WL 11565552 (S.D. Ill. Sept. 17, 2010) ...................................... 7

*Keeton v. Hustler Magazine, Inc.,*
  465 U.S. 770 (1984) ............................................................................................... 6

*Lexington Ins. Co. v. Hotai Ins. Co., Ltd.,*
  938 F.3d 874 (7th Cir. 2019) .................................................................................. 6

*Lowe v. CVS Pharmacy, Inc.,*
  233 F. Supp. 3d 636 (N.D. Ill. 2017) ...................................................................... 8

*MC Asset Recovery, LLC v. Commerzbank AG,*
  No. 06-013-Y, 2015 WL 13544919 (N.D. Tex. Dec. 10, 2015) ................................. 5

*McKinnon v. Doctor's Associates, Inc.,*
  769 F. Supp. 216 (E.D. Mich. 1991) ....................................................................... 4

*Mussat v. Power Liens, LLC,*
  No. 13-7853-SJC, 2014 WL 3610991 (N.D. Ill. July 21, 2014) ................................ 16

*Namuwonge v. Kronos, Inc.,*
  418 F. Supp. 3d 279 (N.D. Ill. 2019) ..................................................... 12, 13, 14, 19

*Nationwide Agribusiness Ins. Co. v. Buhler Barth GmbH,*
  No. 15-00582-JAM-EPG, 2015 WL 6689572 (E.D. Cal. Oct. 30, 2015) ..................... 4

*Neals v. PAR Tech. Corp.,*
  419 F. Supp. 3d 1088 (N.D. Ill. 2019) .............................................................. 11, 18

*Norberg v. Shutterfly, Inc.,*
  152 F. Supp. 3d 1103 (N.D. Ill. 2015) ..................................................................... 8

*Paylan v. Bondi,*
  No. 15-1366-AEP, 2015 WL 12819148 (M.D. Fla. Nov. 9, 2015), *report and
  recommendation adopted,* No. 15-1366-AEP, 2015 WL 9488326 (M.D. Fla. Dec. 30,
  2015) ..................................................................................................................... 5

*Peatry v. Bimbo Bakeries USA, Inc.,*
  No. 19-2942-SLE, 2020 WL 919202 (N.D. Ill. Feb. 26, 2020) ................................. 20

iv

*Pippen v. NBCUniversal Media, LLC*,
   734 F.3d 610 (7th Cir. 2013) ......................................................................... 20

*Purdue Research Found. v. Sanofi-Synthelabo, S.A.*,
   338 F.3d 773 (7th Cir. 2003) ........................................................................... 6

*Rosenbach v. Six Flags Entm't Corp.*,
   2019 IL 123186, 129 N.E.3d 1197 ...................................................... 17, 19, 20

*Sterling Const. Corp. v. SOS Const. & Roofing, Inc.*,
   No. 14-1959, 2015 WL 2189588 (N.D. Ind. May 11, 2015) ............................. 4

*Swanson v. Citibank, N.A.*,
   614 F.3d 400 (7th Cir. 2010) ...................................................................... 9, 10

*Ticketreserve, Inc. v. Viagogo, Inc.*,
   656 F. Supp. 2d 775 (N.D. Ill. 2009) ............................................................... 8

*United States ex rel. Presser v. Acacia Mental Health Clinic, LLC*,
   836 F.3d 770 (7th Cir. 2016) ......................................................................... 14

*Walden v. Fiore*,
   571 U.S. 277 (2014) ......................................................................................... 8

**Statutes**

740 ILCS 14/1 ....................................................................................................... 1

740 ILCS 14/10 ................................................................................................... 17

740 ILCS 14/15 ..................................................................................... 10, 11, 16

740 ILCS 14/20 ................................................................................................... 20

740 ILCS 14/25 ................................................................................................... 17

**Rules**

Fed. R. Civ. P. 8(a)(2) ........................................................................................... 9

**Other Authorities**

*Black's Law Dictionary* (11th ed. 2019) ........................................................... 12

The Court should deny Defendant Amazon Web Services, Inc.'s ("AWS") motion to dismiss because each of AWS's arguments lacks merit.  AWS cannot dispute that the complaint contains detailed allegations of AWS's collection, possession, and use of biometric voice data—all of which AWS publicly advertises.  Instead, AWS misleadingly, and inaccurately, labels Plaintiffs' allegations "conclusory," and advances entirely unsupported legal theories that are contrary to controlling authority and incorrect as a matter of law.  AWS's arguments are baseless:

- Even setting aside AWS's waiver of its personal jurisdiction defense, AWS is subject to personal jurisdiction in Illinois because it intentionally collected, possessed, and used biometric voice data from Illinois citizens using Illinois phone numbers in Illinois.

- The complaint, which describes in detail the process by which AWS harvested and profited from Illinois citizens' biometric voice data, far more than adequately pleads Illinois Biometric Information Privacy Act (740 ILCS 14/1 *et seq.*) ("BIPA") claims.

- AWS's unfounded and unsupported argument that it is subject to BIPA's financial institutions exemption based on its commercial relationship with a financial institution is directly contrary to BIPA's plain language.

- AWS's demand that this Court create new law by exempting third parties from BIPA is fundamentally inconsistent with BIPA's plain language, has been expressly rejected by other courts, and would materially undermine BIPA's purpose and intent.

- AWS's assertion that Plaintiffs have failed to plead that AWS acted with the requisite state of mind is legally incorrect, as there is no requirement that Plaintiffs plead AWS's state of mind, and Plaintiffs have, in any event, clearly done so.

For these reasons, and the additional reasons set forth below, AWS's motion should be denied.

## BACKGROUND

### A.    Defendant Amazon Web Services, Inc.

AWS provides call center services to corporations in Illinois and throughout the country. Complaint, Doc. 1-1 ("Compl.")  ¶¶ 29, 50–52, 74.  AWS sells its cloud-based call center services under the brand "Amazon Connect."  Compl. ¶¶ 46–47, 53.  AWS markets Amazon

Connect to potential customers by advertising Amazon Connect's ability to "integrat[e]" with services and technology provided by various vendors. *Id*. ¶ 50. AWS selects and vets the vendor "partners" that provide these services and technology, lists these vendor partners on its website and in its marketing materials, and publishes guidance explaining its process for "integrat[ing]" these vendor partners' technology and services into its call center offerings. *Id.* ¶¶ 50–52. AWS's corporate clients, including John Hancock, contract with AWS and its vendor partners to purchase and implement integrated call center services and technology. *Id.* ¶ 71.

###### B.    AWS's Collection, Possession, and Use of Biometric Voice Data

One of AWS's partners is Pindrop Security, Inc. ("Pindrop"). AWS and Pindrop have jointly developed a method for integrating biometric voice recognition technology into Amazon Connect's call center services. *Id*. ¶¶ 51–52, 55. AWS uses this biometric voice recognition technology as a selling point to distinguish AWS's call center services. *Id*. ¶¶ 55–56. By advertising biometric voice recognition as a feature of Amazon Connect call centers, AWS attracts more customers, sells more call center services, and thereby profits. *Id*. ¶¶ 53–56, 65.

AWS's collection, possession, and use of biometric voice data takes place as follows: First, AWS sends callers' voice data to Pindrop for processing. *Id*. ¶ 58 n.11 (quoting Amazon Connect Pindrop Integration Guide, Doc. 57-1 ("Integration Guide")). Pindrop processes this voice data and converts it into biometric voice data. *Id*. ¶¶ 57–59. Pindrop then sends the biometric voice data to AWS, which it uses in various ways, including by "handl[ing] the caller based on" an assigned "risk score" and disseminating the biometric voice data to Amazon Connect end users. *Id*. Additionally, AWS identifies inbound callers using their biometric voiceprints. *Id*. ¶¶ 52, 72–73.

AWS has not made available to the public a written policy establishing a retention schedule and destruction guidelines for biometric voice data. *Id*. ¶¶ 62, 76. AWS does not inform callers that their biometric voice data is being collected, let alone obtain callers' informed written consent. *Id*. ¶¶ 61, 74–75. Nor does AWS obtain consent from callers to disseminate their biometric voice data. *Id*. ¶ 64.

### C.   Plaintiffs Christine McGoveran, Joseph Valentine, and Amelia Rodriguez

Plaintiffs Christine McGoveran, Joseph Valentine, and Amelia Rodriguez filed their complaint against AWS and Pindrop for violations of BIPA on December 17, 2019. Plaintiffs are all Illinois citizens. *Id*. ¶¶ 21–23.

In 2019 and before, Plaintiffs called John Hancock, which used AWS's Amazon Connect call center services. *Id.* ¶¶ 70–71; Doc. 57-2, Declaration of Christine McGoveran ("McGoveran Dec.") ¶ 3; Doc. 57-3, Declaration of Joseph Valentine ("Valentine Dec.") ¶ 3; Doc. 57-4, Declaration of Amelia Rodriguez ("Rodriguez Dec.") ¶ 3. When Plaintiffs made these calls, Plaintiffs were residents of Illinois, were located in Illinois, and used Illinois phone numbers. McGoveran Dec. ¶¶ 2–5; Valentine Dec. ¶¶ 2–5; Rodriguez Dec. ¶¶ 2–5. AWS did not inform Plaintiffs that it was collecting, possessing, and using their biometric voice data. Compl. ¶ 74. AWS did not ask Plaintiffs for consent prior to collecting, possessing, and using their biometric voice data. *Id.* ¶¶ 63, 75.

## <u>ARGUMENT</u>

The Court should deny AWS's motion to dismiss. First, this Court has personal jurisdiction over AWS, which knowingly and intentionally intercepted telephone calls made by Illinois citizens from Illinois using Illinois phone numbers. Second, Plaintiffs' detailed allegations that AWS has obtained, possessed, used, disseminated, and profited from Plaintiffs' biometric voice data without obtaining informed written consent overwhelmingly demonstrate

3

that AWS violated BIPA.  Third, AWS's unfounded and unsupported arguments that it is legally exempt from BIPA fail as a matter of law.

**I.     AWS Is Subject to Personal Jurisdiction in This Court**

       A.     <u>AWS Has Consented to This Court's Personal Jurisdiction</u>

AWS has consented to this Court's personal jurisdiction, because it asked this Court to compel discovery from Plaintiffs and affirmatively stated that it will seek to compel arbitration before asserting a personal jurisdiction defense.  Doc. 32.

Where a defendant's actions create a reasonable expectation that it will defend a suit on the merits, or where those actions require "some effort that would be wasted if personal jurisdiction is later found lacking," the defendant consents to personal jurisdiction.  *In re Syngenta Mass Tort Actions*, No. 15-01121, 2017 WL 713694, at *6 (S.D. Ill. Feb. 20, 2017); *see also German Am. Fin. Advisors & Tr. Co. v. Rigsby*, 623 Fed. Appx. 806, 809 (7th Cir. 2015) (filing a motion asking for additional time to respond, coupled with previewing proposed defenses unrelated to personal jurisdiction, was consent to personal jurisdiction).  "Generally, a party who requests affirmative relief and rulings from a court is considered to have waived the personal jurisdiction defense."  *In re Asbestos Products Liab. Litig. (No. VI)*, 921 F.3d 98, 106 (3d Cir. 2019) (citing *Adam v. Saenger*, 303 U.S. 59, 58 (1938)) (additional citations omitted); *Derse Inc. v. Haas Outdoors Inc.*, No. 09-97, 2011 WL 554060, at *3 (E.D. Wis. Feb. 4, 2011) (motion to compel arbitration prior to asserting personal jurisdiction defense was waiver).[1]

---

[1] *See also Sterling Const. Corp. v. SOS Const. & Roofing, Inc.*, No. 14-1959, 2015 WL 2189588, at *2 (N.D. Ind. May 11, 2015) (same); *Nationwide Agribusiness Ins. Co. v. Buhler Barth GmbH*, No. 15-00582-JAM-EPG, 2015 WL 6689572, at *2 (E.D. Cal. Oct. 30, 2015) (same); *Express Scripts, Inc. v. Apothecary Shoppe, Inc*., No. 12-01035-AGF, 2013 WL 5491873, at *4 (E.D. Mo. Sept. 30, 2013) (same); *McKinnon v. Doctor's Associates, Inc*., 769 F. Supp. 216, 220 (E.D. Mich. 1991) (same).

Thus, asking a court to compel discovery constitutes a request for affirmative relief that waives any objection to personal jurisdiction.[2]

Here, AWS unsuccessfully moved to compel discovery related to its (meritless) defense that arbitration is required prior to asserting a personal jurisdiction defense.  Docs. 32, 34, 46.  AWS did not reserve its right to contest this Court's jurisdiction.  Doc. 32.  AWS's motion required significant briefing, and AWS attempted to support its motion by arguing that this Court should compel arbitration, creating the reasonable expectation that AWS would submit to this Court's jurisdiction.  Doc. 32.  By seeking affirmative relief without contesting personal jurisdiction, AWS consented to this Court's jurisdiction.[3]

B.    AWS Is Subject to Personal Jurisdiction in This Court Irrespective of Its Consent

Irrespective of its consent, AWS is subject to Illinois's jurisdiction because it collected, possessed, and used the biometric voice data of Plaintiffs, who are Illinois citizens located in Illinois with Illinois phone numbers.  As discussed in detail in Plaintiffs' opposition to Pindrop's motion to dismiss, Plaintiffs are not required to plead personal jurisdiction.  Doc. 57 at 14.  Instead, Plaintiffs need only come forward with evidence of personal jurisdiction after a motion to dismiss is filed.  *Id.*  Further, Plaintiffs are only required to make "a prima facie case of

---

[2] *See Paylan v. Bondi*, No. 15-1366-AEP, 2015 WL 12819148, at *2 (M.D. Fla. Nov. 9, 2015), *report and recommendation adopted*, No. 15-1366-AEP, 2015 WL 9488326 (M.D. Fla. Dec. 30, 2015); *MC Asset Recovery, LLC v. Commerzbank AG*, No. 06-013-Y, 2015 WL 13544919, at *5 (N.D. Tex. Dec. 10, 2015).

[3] Further, AWS conceded Illinois's jurisdiction in its since-withdrawn motion to transfer. Doc. 50.  AWS argued in that motion that seeking to transfer to a different Illinois court did not waive its right to contest personal jurisdiction, citing *Allied Van Lines, Inc. v. Aaron Transfer & Storage, Inc*., 200 F. Supp. 2d 941, 945 (N.D. Ill. 2002).  Doc. 50 at 7.  But that case stands for the opposite proposition:  that "[d]efendants apparently concede jurisdiction in Texas, as they seek transfer to that district."  *Id.*

personal jurisdiction." *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003).

There can be no serious dispute that Illinois courts have personal jurisdiction over nonresidents alleged to have reached into Illinois through phone or electronic means to commit intentional torts against Illinois residents, as AWS did here.  To establish specific personal jurisdiction over a nonresident defendant, a plaintiff must present a prima facie case that (1) the defendant's contacts demonstrate "that it 'purposefully availed [itself] of the privilege of conducting business in the forum state or purposefully directed [its] activities at the state;'" (2) "'the plaintiff's alleged injury . . . [arose] out of the defendant's forum-related activities;'" and (3) "'any exercise of personal jurisdiction . . . comport[s] with traditional notions of fair play and substantial justice.'" *Curry v. Revolution Labs., LLC*, 949 F.3d 385, 398 (7th Cir. 2020) (quoting *Lexington Ins. Co. v. Hotai Ins. Co., Ltd.*, 938 F.3d 874, 878 (7th Cir. 2019)).  Contrary to AWS's focus on its physical locations (Doc. 49 at 5), "physical presence is not necessary for a defendant to have sufficient minimum contacts with a forum state."  *Curry*, 949 F.3d at 398. Further, "'purposeful direction' may be shown by evidence that the defendant's actions, even if initiated outside of the forum state, nevertheless were directed at the forum state."  *Id.* (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774–75 (1984)).  For acts that a defendant is alleged to have taken, such as acts underlying BIPA violations, "purposefully directed" conduct is established by "(1) intentional conduct (or 'intentional and allegedly tortious' conduct); (2) expressly aimed at the forum state; (3) with the defendant's knowledge that the effects would be felt—that is, the plaintiff would be injured—in the forum state."  *Felland v. Clifton*, 682 F.3d 665, 674–75 (7th Cir. 2012) (internal quotations omitted).

Courts have repeatedly held that when intentional and tortious conduct takes place during telephone communications involving a resident of the forum state and a phone number associated with the forum state, the non-resident defendant expressly aimed its conduct at the forum state with knowledge of its effect in the forum state. *See id.* ("lulling" communications by phone and other means with a resident of the forum state that were part of an alleged fraudulent scheme were sufficient to establish personal jurisdiction); *Johnson v. Levine*, No. 09-0994, 2010 WL 11565552, at *3–4 (S.D. Ill. Sept. 17, 2010) (phone calls with an Illinois resident using an Illinois phone number on which an out-of-state defendant made allegedly fraudulent statements established personal jurisdiction in Illinois).[4]

Here, each Plaintiff made calls from Illinois.  McGoveran Dec. ¶ 3; Valentine Dec. ¶ 3; Rodriguez Dec. ¶ 3.  When Plaintiffs made these calls, they were residents of Illinois, were physically located in Illinois, and used phone numbers associated with Illinois area codes. McGoveran Dec. ¶¶ 2–5; Valentine Dec. ¶¶ 2–5; Rodriguez Dec. ¶¶ 2–5.  AWS harvested Plaintiffs' voice data from these calls made from Illinois using Illinois phone numbers, and sent that data to Pindrop to collect and process Plaintiffs' biometric voiceprints, which Pindrop then sent back to AWS.  Compl. ¶¶ 38–43, 58–60, 71–73; *see also* Integration Guide at 2.  AWS's knowing interception of calls from Illinois residents for the collection, possession, and transfer of their biometric voice data is the central intentional conduct at issue in this case and gives Illinois personal jurisdiction.  Indeed, Plaintiffs' claims all arise out of the misuse of the biometric data collected on these calls.  Additionally, because Plaintiffs are "private Illinois resident[s,] there is a strong interest in adjudicating the matter locally" and "there are sufficient minimum contacts to establish specific personal jurisdiction without offending the notions of fair play and substantial

---

[4] *See also* Doc. 57 at 15 n.6 (citing additional cases).

justice." *Norberg v. Shutterfly, Inc.*, 152 F. Supp. 3d 1103, 1105 (N.D. Ill. 2015) (holding

Illinois had personal jurisdiction over a non-resident corporation based on its violations of

BIPA); *see also Curry*, 949 F.3d at 402 ("Illinois has a strong interest in providing a forum for its

residents . . . to seek redress for harms suffered within the state by an out-of-state actor.").[5]

AWS relies primarily on *Walden v. Fiore*, 571 U.S. 277, 284 (2014) to argue that

personal jurisdiction should not be based on the fact that Plaintiffs are located in Illinois.  Doc.

49 at 3–4.  However, *Walden* did not change the law regarding torts committed by telephonic and

electronic means.  *See Curry*, 949 F.3d at 396 (*Walden* "confirmed that the inquiry into specific

jurisdiction has not changed").  In fact, the *Walden* Court explicitly stated that "this case *does not*

*present the very different questions* whether and how a *defendant's virtual 'presence' and*

*conduct* translate into 'contacts' with a particular State."  *Walden*, 571 U.S. at 290 n.9 (emphasis

added).  Accordingly, courts in the Seventh Circuit continue to hold that personal jurisdiction

exists over defendants alleged to have virtually entered a state by phone or electronically to

commit an intentional tort against a resident.[6]  AWS's wholly unsupported interpretation of

*Walden* would give states no ability to redress harms committed against their residents by out-of-

state defendants using telephonic or electronic communications to reach into states, and is

---

[5] Because personal jurisdiction is conferred both by AWS's consent to this Court's jurisdiction and AWS's intentional acts affecting Illinois citizens described above, AWS's motion should be denied without jurisdictional discovery.  At a minimum, jurisdictional discovery should be granted before AWS's personal jurisdiction arguments are accepted.  *See Ticketreserve, Inc. v. Viagogo, Inc.*, 656 F. Supp. 2d 775, 782 (N.D. Ill. 2009) (jurisdictional discovery appropriate where the factual record pertaining to jurisdiction is unclear).

[6] *E.g., Lowe v. CVS Pharmacy, Inc.*, 233 F. Supp. 3d 636, 645 (N.D. Ill. 2017) (operator's "act of placing a call to a phone number with an Illinois-affiliated area code" constituted purposeful direction toward state, conferring personal jurisdiction); *Greene v. Karpeles*, No. 14-1437, 2019 WL 1125796, at *7 (N.D. Ill. Mar. 12, 2019) (website operator subject to Illinois jurisdiction based on its virtual presence here among other states).

contrary to controlling Seventh Circuit authority.  *See Felland*, 682 F.3d at 674–75.

AWS is also incorrect that the complaint alleges that only John Hancock, and not AWS, purposefully directed activity toward Illinois.  Doc. 49 at 5.  To be clear, the complaint does not allege BIPA violations by John Hancock.  Compl. ¶¶ 47, 71.  Instead, the complaint alleges that when Plaintiffs called customer service regarding their John Hancock accounts, the calls went to AWS, which intentionally harvested Plaintiffs' voice data.  Compl. ¶¶ 57–59.  AWS's virtual entry into Illinois to collect, possess, use, disseminate, and profit from biometric voice data from Illinois residents without complying with BIPA took place independent of conduct by John Hancock, and subjects AWS to personal jurisdiction in Illinois.

## II.    Plaintiffs' Allegations Demonstrate That AWS Violated BIPA

Because the complaint more than adequately alleges BIPA violations against AWS, the Court should deny AWS's motion, which misleadingly labels Plaintiffs' allegations "conclusory," improperly argues the merits of Plaintiffs' claims, and relies on matters outside the complaint.  A motion to dismiss for failure to state a claim is meant to "test the sufficiency of the complaint, not to decide the merits."  *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990) (citation omitted).  Accordingly, a court must accept as true all well-pleaded allegations and draw all reasonable inferences in a plaintiff's favor.  *Cole v. Milwaukee Area Tech. Coll. Dist.*, 634 F.3d 901, 903 (7th Cir. 2011).  A complaint need only contain a short, plain statement of the claim.  Fed. R. Civ. P. 8(a)(2).  A court may grant a motion to dismiss for failure to state a claim only if the complaint lacks "enough facts to state a claim [for] relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 697 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010).  Consequently, "[t]he pleader's responsibility" is only to "'state a claim to relief that is plausible on its face.'"

*Swanson,* 614 F.3d at 404 (quoting *Twombly*, 550 U.S. at 570).  "'Plausibility' in this context does not imply that the district court should decide whose version to believe, or which version is more likely than not."  *Swanson*, 614 F.3d at 404.  Rather, the Seventh Circuit has interpreted *Twombly* and *Iqbal's* plausibility standard to require a court to ask itself "could these things [(plaintiffs' factual allegations)] have happened, not did they happen."  *Swanson*, 614 F.3d at 404.

Plaintiffs plausibly allege that AWS violated multiple provisions of BIPA, including Section 15(b) (entities that "collect, capture, purchase, receive through trade, or otherwise obtain" individuals' biometric data must provide notice "in writing" and obtain informed written consent); Section 15(a) (entities that possess biometric data "must develop a written policy, made available to the public" regarding the retention and destruction of the data); Section 15(c) (entities that possess biometric data may not "profit from" it); Section 15(d) (entities may not disseminate biometric data without consent or authorization); and Section 15(e) (entities that possess biometric data must "store, transmit, and protect" it from disclosure in a manner consistent with "the reasonable standard of care within" an industry).  740 ILCS 14/15(a)–(e).

A.     The Complaint Adequately Alleges That AWS Obtains Biometric Voice Data

Plaintiffs have alleged in extensive detail how AWS collected and obtained their biometric voice data in violation of Section 15(b).  As AWS represents in its marketing materials, AWS identifies callers based on analysis of their biometric voiceprints.  Compl. ¶¶ 46, 50, 51, 55, 57, 59.  Further, AWS and Pindrop jointly publish an "Integration Guide," which describes their method for collecting biometric voice data from callers, including Plaintiffs.  *Id*. ¶ 41 n.3.  As described above, and as described in detail in the complaint, voice data is intercepted by AWS, sent to Pindrop for processing, then sent back to AWS for further use.  *Id*. ¶¶ 57, 59.  Callers' biometric voice data is then disseminated by AWS to end users via Amazon Connect.

10

*Id.* ¶ 60; Integration Guide at 3.  Accordingly, AWS collected, possessed, and used Plaintiffs'
biometric voice data.

Contrary to AWS's arguments, Section 15(b) does not limit its applicability to entities
that "actively" collect biometric data.  *Cf.* Doc. 49 at 8.  Rather, Section 15(b) applies to any
private entity that "capture[s], purchase[s], receive[s] through trade, or otherwise obtain[s]"
biometric identifiers or information.  740 ILCS 14/15(b); *see also Neals v. PAR Tech. Corp.*, 419
F. Supp. 3d 1088, 1092 (N.D. Ill. 2019) (holding that BIPA does not contain an "active"
collection requirement).  AWS does not identify any language within Section 15(b) that imposes
an "active" collection requirement, because there is none.

Moreover, even if AWS were correct that Section 15(b) required "active" collection of
biometric data, the complaint easily alleges a violation.  The case on which AWS ostensibly
relies for its argument that Section 15(b) requires "active" collection of biometric data, *Heard v.
Becton, Dickinson & Co.*, No. 19-4158-RRP, 2020 WL 887460 (N.D. Ill. Feb. 24, 2020), is in
this regard easily distinguishable.  In *Heard,* a plaintiff failed to "allege how the data made its
way to [defendant's] systems," and failed to describe the defendant's involvement in obtaining
biometric data *at all*.  *Id.* at *4.  The *Heard* plaintiff indicated he had information regarding
defendant's collection of biometric data, but "chose not to include the information in these
statements—*or any factual content* concerning the critical issue of collection—in his pleadings."
*Id.* at *5 (emphasis added).

By contrast, Plaintiffs have alleged in extensive detail how AWS actively obtains and
uses voice biometric data:  AWS (1) intercepts call audio via Amazon Connect, (2) collects voice
audio data, (3) sends the voice data to Pindrop for processing, (4) receives biometric voice data
from Pindrop via its servers, and (5) disseminates biometric voice data to AWS's Amazon

Connect users.  Compl. ¶¶ 41, 51, 57–59, 73; Integration Guide at 1.  *Heard*, accordingly, is inapposite.

      B.      The Complaint Adequately Alleges That AWS Possessed Biometric Voice Data

Plaintiffs' complaint more than adequately alleges that AWS possessed Plaintiffs' biometric data under Sections 15(a), 15(c), 15(d) and 15(e).  As set forth in the complaint, when Plaintiffs placed calls to John Hancock, AWS intercepted their voice audio data.  Compl. ¶¶ 58–59, 67–73.  AWS sent this voice audio data to Pindrop for processing, Pindrop returned it to AWS as biometric voice data, and AWS provided it to its end users.  Compl. ¶¶ 45–49, 57, 59; Integration Guide at 1.  Plaintiffs' allegations that AWS collected biometric identifiers and created biometric information, accordingly, "sufficiently allege[]" that AWS "possessed" biometric voice data.  *Namuwonge v. Kronos, Inc.*, 418 F. Supp. 3d 279, 283–84 (N.D. Ill. 2019) (plaintiffs' allegations that their employer disclosed their biometric data to a service provider sufficiently alleged that the service provider "possessed" biometric data).

AWS's argument that alleging "possession" requires a plaintiff to specifically allege "ownership," moreover, is baseless and entirely unsupported by the statutory text.[7]  While BIPA does not define the word "possession," its plain and ordinary meaning is "the act of having or taking into control" or "control or occupancy of property *without regard to ownership*."  Merriam-Webster, https://www.merriam-webster.com/dictionary/possession (last visited June 17, 2020) (emphasis added); *accord Black's Law Dictionary* (11th ed. 2019) (defining "possess"

---

[7] In the event that "ownership" were required to plead or prove a claim under Sections 15(a), 15(c), 15(d) or 15(e)—which it is not—Plaintiffs' allegations are sufficient.  Plaintiffs allege ownership by alleging that AWS "possesses" customer data, and that it creates and hosts biometric information and biometric identifiers on its own servers.  Compl. ¶¶ 48, 57–60.  While AWS argues that its policies are evidence that AWS does not own the biometric data at issue (Doc. 49 at 11–14), moreover, AWS is not entitled to judicial notice of these policies, which may not be considered at this stage.  *See* Section II.D.

as "[t]o have in one's actual control; to have possession of").  Indeed, AWS's own cases hold

that a plaintiff adequately alleges possession merely by alleging that biometric information was

"disclosed."  *Namuwonge*, 418 F. Supp. 3d at 283–84; *Heard*, 2020 WL 887460, at *5.  In the

*Heard* case on which AWS relies, further, the court explicitly rejected the precise definition of

"possession" that AWS advocates.  *Heard*, 2020 WL 887460, at *5 (Defendant "argued that the

term 'possession' in the BIPA contemplates an exercise of dominion and control 'to the

exclusion of others,' but *the court disagrees*.") (emphasis added).[8]

C.    The Complaint Adequately Alleges That AWS Profits from and Disseminates
      Biometric Voice Data and Violates the Applicable Standard of Care

Plaintiffs' allegations more than adequately demonstrate that AWS has profited from

Plaintiffs' biometric data in violation of Section 15(c).  AWS publicly advertises Amazon

Connect by touting its integration with Pindrop's biometric voice services.  Compl. ¶¶ 50–52.

By marketing biometric voice capabilities to its customers as a way of distinguishing Amazon

Connect from other providers' call center offerings, AWS sells Amazon Connect, and thereby

profits.  *Id*. ¶ 53–55.  AWS inexplicably ignores these allegations.[9]

---

[8] Again, *Heard* turned on the plaintiff's failure to allege whether the defendant "could freely access the data or even how [defendant] allegedly received it."  *Id*. (quoting with approval *Namuwonge*, 418 F. Supp. 3d at 284 ("[T]he plaintiff's 'allegation that [the employer] disclosed their employees' fingerprint data to [defendant service provider] sufficiently alleges that [defendant service provider] possessed the fingerprint data collected by [the employer].'")).

[9] AWS instead cites *Bernal v. ADP, LLC*, No. 2017-CH-12364-DBA, 2019 WL 5028609, (Ill. Cir. Ct. Aug. 23, 2019)*,* a case decided under Illinois's fact-pleading standard, in support of its position.  Doc. 49 at 14.  But AWS does not argue that the Illinois state law pleading requirements apply.  Further, the *Bernal* complaint, unlike the complaint here, was wholly devoid of any factual allegations regarding how the defendant allegedly profited from biometric information, and instead alleged only that the defendant "disseminate[d] biometric information to third parties, including vendors for timekeeping, data storage, and payroll purposes."  *Bernal*, 2019 WL 5028609, at *4 (internal quotation marks omitted).  Plaintiffs' complaint, by contrast, explains that AWS sells its call center services by advertising that it collects voice biometric data, thereby generating profits for itself.  Compl. ¶¶ 50–54.

Plaintiffs' allegations likewise more than adequately demonstrate that AWS disseminated Plaintiffs' biometric data in violation of Section 15(d).  The complaint alleges that AWS intercepted the voice transmissions of Plaintiffs, sent Plaintiffs' voice data to Pindrop for processing, and collected, possessed, and used the resulting biometric data.  *Id*. ¶¶ 57, 59, 67–73. AWS then disseminated Plaintiffs' biometric data to end users of Amazon Connect.  *Id*. ¶¶ 34–35, 39–43, 51, 57–59, 72–73, *see also* Integration Guide at 3.  Again ignoring Plaintiffs' detailed allegations, AWS erroneously asserts that the complaint does not allege "how or to whom AWS allegedly disclosed" biometric data.  Doc. 49 at 15.  AWS additionally relies on cases that, unlike this one, lacked specific allegations regarding the manner of dissemination.  *See Heard,* 2020 WL 887460, at *2 (alleging disclosure to "unknown" third parties); *Namuwonge*, 418 F. Supp. 3d at 285 (alleging that the employer had "no idea whether any Defendant sells, discloses, re-discloses, or otherwise disseminates their biometric data").

Furthermore, the complaint sufficiently alleges that AWS has failed to apply the appropriate standard of care to the biometric voice information that it collects, possesses, and uses.  Compl. ¶ 66.  AWS has no publicly available policy regarding its protection and retention of Illinois citizens' biometric voice data, so any method of protecting Illinois citizens' biometric data that AWS employs is nonpublic, and within AWS's exclusive control.  Plaintiffs therefore lack information regarding any efforts AWS has made to protect its biometric voice data from disclosure.  Plaintiffs' allegations concerning AWS's lack of precaution in transmitting the sensitive biometric data of Illinois citizens are nonetheless adequate and plausible.  *See United States ex rel. Presser v. Acacia Mental Health Clinic, LLC*, 836 F.3d 770, 778 (7th Cir. 2016) ("[C]ourts remain sensitive to information asymmetries that may prevent a plaintiff from offering more detail[.]"); *In re Plasma-Derivative Protein Therapies Antitrust Litig.*, 764 F. Supp. 2d 991,

14

1003 n.10 (N.D. Ill. 2011) (given that private plaintiffs "do not have access to inside

information," the pleading standard must account for "the fact that a complaint will ordinarily be

limited to allegations pieced together from publicly available data"); *In re Broiler Chicken*

*Antitrust Litig.*, 290 F. Supp. 3d 772, 804 (N.D. Ill. 2017) (same).  AWS, moreover, failed to

comply with BIPA's requirements over a decade after the statute was enacted, which is sufficient

to create an inference that AWS failed to act with the requisite standard of care.

> D.   The Complaint Adequately Alleges That AWS Failed to Develop a Public,
>      Written Policy Concerning the Destruction and Retention of Biometric Data

The complaint's allegations that AWS failed to develop a public, written policy

concerning the destruction and retention of biometric voice data more than adequately state a

Section 15(a) claim.  Plaintiffs allege that AWS has not made available to the public *any* written

policy establishing a retention schedule or guidelines for permanently destroying biometric

identifiers and biometric information, as Section 15(a) requires.  Compl. ¶ 62.  As AWS cannot

seriously dispute, these allegations state a Section 15(a) claim.

AWS's argument that its general data privacy policies comply with section 15(a) of BIPA

and thus foreclose Plaintiffs' Section 15(a) claim fails for two reasons:  First, the Court may not

consider information outside the complaint on a motion to dismiss.  Second, the policies AWS

attaches support Plaintiffs' claims.

As an initial matter, the Court cannot take judicial notice of Amazon's alleged general

data privacy policies.  A court can take judicial notice of matters of public record in ruling on a

motion to dismiss—but this "narrow exception" applies only to "*undisputed fact[s]*."  *Gen. Elec.*

*Capital Corp., v. Lease Resolution Corp*., 128 F.3d 1074, 1081 (7th Cir. 1997) (emphasis added).

AWS provides no authority whatsoever to support its position that its website may be judicially

noticed.  Indeed, courts routinely decline to take judicial notice of documents published on non-

governmental websites.  *E.g.*, *Felty v. Driver Sols., LLC*, No. 13-2818-CPK, 2013 WL 5835712, at *3 (N.D. Ill. Oct. 30, 2013) ("[The Court] is neither required nor inclined to take judicial notice of any website material[.]"); *Mussat v. Power Liens, LLC*, No. 13-7853-SJC, 2014 WL 3610991, at *3 (N.D. Ill. July 21, 2014) (the internet contains information "with varying levels of reliability" of which a court "is not required to take judicial notice").  If the Court were to consider these policies, AWS's motion should be converted into a motion for summary judgment and Plaintiffs must be allowed discovery on the issue.[10]  *See* Doc. 57 at 12–13.

Moreover, even if the Court could consider extrinsic evidence on a motion to dismiss— and it cannot—the data privacy policies that AWS identifies affirmatively demonstrate that AWS failed to comply with Section 15(a).  Section 15(a) requires that a "private entity in possession of" biometric data must develop and make publicly available a policy "establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years[.]"  740 ILCS 14/15(a).  The policies AWS attaches make *absolutely no mention* of (i) biometric information, (ii) biometric identifiers, (iii) a retention schedule, or (iv) destruction of biometric data.  Docs. 49-6, 49-7.  AWS does not explain how its general privacy policies, which say nothing about biometric information or the specific protections required by BIPA, demonstrate compliance with Section 15(a).

---

[10] Further, far from setting forth "undisputed facts," AWS's purported general data privacy policies raise more questions than they answer.  These policies make no mention of Amazon Connect, Pindrop, or John Hancock.  Docs. 49-6, 49-7.  It is unclear whether they could or would ever have been seen by Amazon Connect customers or members of the proposed class, or what connection, if any, they have to the matters alleged in Plaintiffs' complaint—all facts regarding which Plaintiffs would be entitled to take discovery.  Rule 56(d) Declaration of Alexander L. Braitberg.

III.    **There Is No Legal Basis for AWS to Evade Plaintiffs' Claims**

Contrary to its assertions, AWS is not immune from BIPA liability.  AWS's arguments

that it is entitled to immunity based on BIPA's financial-institutional exception and because it is

a third-party service provider are meritless and wholly unsupported.  AWS's position that

Plaintiffs have failed to plead the requisite state of mind is, likewise, fundamentally flawed.

A.      <u>AWS Is Not a Financial Institution Exempt from BIPA</u>

AWS's argument that it is exempt from BIPA liability because its client is an exempt

financial institution is legally incorrect and lacks any support.  Doc. 49 at 6–7.  BIPA's narrow

financial institution exemption provides only that the Act does not apply "to a financial

institution or an affiliate of a financial institution that is subject to Title V of the federal Gramm-

Leach-Bliley Act of 1999 and the rules promulgated thereunder."  740 ILCS 14/25(c).  AWS

does not attempt to argue that it is a financial institution or affiliate, and therefore cannot claim

the benefit of this exemption.  AWS's position is directly contrary to BIPA's plain language and

basic canons of statutory interpretation.  Doc. 57 at 17–18 (discussing Pindrop's similar claim).

Moreover, when the Illinois General Assembly wanted to immunize agents of exempt

entities from BIPA liability, it made its "intention clear" in the statute.  *Rosenbach v. Six Flags

Entm't Corp.*,  2019 IL 123186, ¶ 25, 129 N.E.3d 1197, 1204.  Along those lines, BIPA not only

exempts "[s]tate or local government agenc[ies]," 740 ILCS 14/10, but further makes clear that

"[n]othing in this Act shall be construed *to apply to a contractor, subcontractor, or agent of a

State agency or local unit of government when working for that State agency or local unit of

government.*"  740 ILCS 14/25(e) (emphasis added).  No such provision accompanies BIPA's

financial institution exemption.  The General Assembly, accordingly, made its "intention clear."

*Rosenbach*, 2019 IL 123186, 129 N.E.3d 1197, 1204.  If BIPA immunity extended to *any* agent

of an exempt entity, section 14/25(e) would be superfluous.

17

B.     <u>AWS's Argument That Third-Party Service Providers Are Exempt from BIPA Is
       Contrary to BIPA's Plain Language and Entirely Unsupported</u>

AWS's argument that third-party service providers are altogether exempt from BIPA is

both directly contrary to the statutory text and entirely unsupported.  Doc. 49 at 7–11.  The Court

should decline to create new law by reading into BIPA AWS's proposed exemption, which

would largely swallow the statute.

Courts have repeatedly rejected AWS's position that third-party service providers are

exempt from BIPA because "there is no textual support whatsoever for such a restricted view of

the statute's application."  *Neals*, 419 F. Supp. 3d at 1092; *Bryant v. Compass Group USA, Inc*.,

958 F.3d 617, 619 (7th Cir. 2020) (employee had standing to bring BIPA claim against third-

party provider of biometric vending machines that employees were "instructed by their

employer" to use); *Figueroa*, 2020 WL 1848206, at *6 (third-party provider of biometric

timekeeping system was required to comply with BIPA's informed written consent requirement).

Courts have also repeatedly rejected AWS's argument that applying BIPA to third parties, as the

plain language of BIPA requires, would be "absurd."  *Neals*, 419 F. Supp. 3d at 1092; *Figueroa*,

2020 WL 1848206, at *6.  Indeed, *Neals* expressly rejected an argument "that it would be

'absurd' to require both an employer and a third-party vendor . . . to comply with the BIPA" and

held BIPA "*obligates any private entity that collects a person's biometric information to comply

with its requirements*." 419 F. Supp. 3d at 1092. (emphasis added).  In fact, when an agent or

third-party service provider obtains biometric data without first obtaining informed written

consent, "[t]hat is a textbook violation of Section 15(b)."  *Figueroa*, 2020 WL 1848206, at *6.[11]

AWS is therefore subject to BIPA by its plain language.

---

[11] Contrary to AWS's assertions, *Namuwonge* did not endorse a blanket exemption for
third parties.  Rather, it merely held that, "[w]ithout more," a bare allegation that an employer

Moreover, adopting a blanket exemption for all third parties would significantly undermine BIPA's purpose and intent.  If service providers and other third parties were made exempt from BIPA liability, private entities would outsource the collection, processing, and possession of biometric data to third parties, rendering *no one* liable under the statute.  This is because a private entity that outsourced the collection, processing, and possession of biometric data to a third party could claim not to have violated BIPA, while the third party to which the work was outsourced could claim immunity based on the exemption that AWS brazenly asks this Court to create.  Both would escape liability.  There is no support for the notion that this result would be in any way consistent with the Illinois General Assembly's intent.  *See Rosenbach*, 2019 IL 123186, 129 N.E.3d 1197, 1204.

C.    AWS's Argument That Plaintiffs Have Inadequately Pleaded AWS's State of Mind Is Legally Incorrect

AWS incorrectly claims that it cannot be held liable for violating BIPA unless its activities are negligent, reckless, or intentional.  Doc. 49 at 16–17.  But even if Plaintiffs were required to allege AWS's state of mind, they have adequately done so.

---

"collected the fingerprints using a system that [the third party] supplied" did "not plausibly allege that [the third party provider] collected, captured, or otherwise obtained" biometric information.  *Namuwonge*, 418 F. Supp. 3d at 286; *see also Figueroa*, 2020 WL 1848206, at *6 (holding that "*Namuwonge* specifically declined to pass on th[e] question" of whether "time clock providers owe no section 15(b) duties when employers use time clocks").  In contrast, Plaintiffs specifically allege that AWS *itself* actively created, possessed, used, and disseminated Plaintiffs' biometric information.  *See* Compl ¶¶ 57–59.  Likewise, *Heard* did not immunize third party service providers from BIPA liability.  *See generally, Heard*, 2020 WL 887460.  Similarly, *Cameron v. Polar Tech Indus., Inc. & ADP, LLC*, No. 2019-CH-000013-BW (DeKalb Cty. Ill. Cir. Ct. Aug. 23, 2019) (Doc. 49-3), an oral ruling without precedential value, limited its decision to "the employment context," and acknowledged the lack of support for its holding.  *Id*. at 22.  Moreover, *Bernal,* another non-binding opinion limited to employment cases*,* dismissed a plaintiff's Section 15(b) claim not because of a blanket third-party service provider exemption, but because the plaintiff "failed to allege facts sufficient enough . . . to properly assess Defendant's actual involvement[.]"  2019 WL 5028609, at *2–3 (Doc. 49-4).  Any across-the-board exemption for service providers is unsupported and contrary to Seventh Circuit authority.  *Bryant,* 958 F.3d at 619.

A defendant's intent is not a pleading requirement, but a standard of culpability used only to determine the scope of a recovery. *Peatry v. Bimbo Bakeries USA, Inc.*, No. 19-2942-SLE, 2020 WL 919202, at *6 (N.D. Ill. Feb. 26, 2020) (citing *Rosenbach*, 2019 IL 123186, ¶¶ 33, 36, 129 N.E.3d at 1206–07).  AWS's position that Plaintiffs must allege AWS's state of mind is therefore legally incorrect.  Under BIPA, moreover, intent is only relevant to evaluating the amount of the statutory damages available. 740 ILCS 14/20.[12]

In any event, even if Plaintiffs were required to plead AWS's state of mind, they have adequately done so.  "States of mind may be pleaded generally, but a plaintiff still must point to details sufficient to render a claim plausible." *Pippen v. NBCUniversal Media, LLC*, 734 F.3d 610, 614 (7th Cir. 2013).  Allegations that a defendant "systematically collect[ed] and disseminat[ed] biometric data without complying with BIPA" more than a decade after BIPA was enacted create a "plausible inference" that the defendant acted with the requisite intent. *Figueroa*, 2020 WL 1848206, at *7–8.[13]  Plaintiffs' allegation that Pindrop and AWS continued to collect voiceprints from Illinois residents in violation of BIPA over eleven years after BIPA's passage is sufficient to infer the conduct was either reckless or negligent.  Compl. ¶¶ 59–66.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss (Doc. 49) should be denied.

---

[12] BIPA also specifically allows for the recovery of relief other than statutory damages, "including an injunction" and "reasonable attorneys' fees and costs."  740 ILCS 14/20.  Here, Plaintiffs seek, among other things, injunctive relief and attorneys' fees and costs.  Compl., Prayer for Relief, pp. 18–19.  Neither requires intent.  740 ILCS 14/20.

[13] *See also* Doc. 57 at 20, n.10 (citing four similar cases).

Dated: June 17, 2020                      Respectfully submitted,

                                          /s/ Andrew D. Schlichter
                                          Jerome J. Schlichter
                                          Troy A. Doles
                                          Andrew D. Schlichter
                                          Joel D. Rohlf
                                          Alexander L. Braitberg
                                          Brett C. Rismiller
                                          SCHLICHTER BOGARD & DENTON, LLP
                                          100 South Fourth St., Ste. 1200
                                          St. Louis, MO 63102
                                          Phone: (314) 621-6115
                                          Fax: (314) 621-5934
                                          jschlichter@uselaws.com
                                          tdoles@uselaws.com
                                          aschlichter@uselaws.com
                                          jrohlf@uselaws.com
                                          abraitberg@uselaws.com
                                          brismiller@uselaws.com

                                          *Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on June 17, 2020, I caused to be served a true and correct copy of the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all parties to this matter via electronic notification or otherwise.

/s/ Andrew D. Schlichter