IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CHRISTINE MCGOVERAN, JOSEPH VALENTINE, and AMELIA RODRIGUEZ, on behalf of themselves and all other persons similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>AMAZON WEB SERVICES, INC. and PINDROP SECURITY, INC.,<br><br>Defendants. | Case No. 3:20-CV-31-NJR |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

This matter is before the Court on the motions to dismiss filed by Defendants Pindrop Security, Inc. (Doc. 35) and Amazon Web Services, Inc. (Doc. 49). Defendants seek to dismiss the case for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). Alternatively, they move for dismissal under Rule 12(b)(6) for failure to state a claim. For the following reasons, this action is dismissed for lack of personal jurisdiction.

## BACKGROUND

On December 17, 2019, Plaintiffs Christine McGoveran, Joseph Valentine, and Amelia Rodriguez filed a putative Class Action Complaint against Defendants Amazon Web Services, Inc. ("AWS"), and Pindrop Security, Inc. ("Pindrop"), in the Circuit Court for the Third Judicial Circuit in Madison County, Illinois, alleging violations of the

Biometric Information Privacy Act (BIPA), 740 ILL. COMP. STAT. § 14/1, *et seq.* (Doc. 1-1). Specifically, Plaintiffs allege Pindrop and AWS violated BIPA by collecting, possessing, redisclosing, profiting from, and failing to safeguard their biometric identifiers and biometric information, including their voiceprints (*Id.* at ¶ 1).

Voiceprinting, also known as voice biometrics, is the use of biological characteristics—one's voice—to verify an individual's identity without requiring the use of a passcode or answers to secret questions (*Id.* at ¶¶ 33-35). Unlike a traditional passcode, however, in the event of a data breach there is nothing the individual can do to prevent someone from using his or her voiceprint to gain access to a compromised account (*Id.* at ¶ 36).

Plaintiffs allege Pindrop offers voiceprint services for use by call centers and customer service personnel to confirm the identity of callers (*Id.* at ¶¶ 38-39). Pindrop does this through its "Deep Voice" product, which uses biometrics to identify and analyze repeat callers (*Id.* at ¶ 42). Similarly, Pindrop's "Phoneprinting" product analyzes call audio to create a distinctive identifier for each caller (*Id.*).

AWS offers cloud storage services, including the ability for customers to store their data, access data remotely, and create backup copies of data (*Id.* at ¶ 45). AWS also offers call center services under the brand "Amazon Connect" (*Id.* at ¶ 46). In connection with Amazon Connect, AWS possesses and stores a variety of types of customer data, including biometric identifiers and information (*Id.* at ¶¶ 48-49).

Pindrop was one of the first partners with AWS in launching Amazon Connect (*Id.* at ¶ 52). Plaintiffs allege that after an individual places a call to an AWS client's call center,

the audio is sent to Pindrop for processing (*Id.* at ¶¶ 57-59; Doc. 57 at p. 8). Pindrop then processes the audio, analyzes the caller's unique voice biometric data, and sends the results of its analysis to AWS's servers (*Id.* at ¶¶ 58-59; Doc. 57 at p. 8). Plaintiffs claim that once this process occurs, AWS then possesses "biometric information" as defined by BIPA (*Id.* at. ¶ 60).

With regard to the named Plaintiffs, the Complaint alleges that they called John Hancock customer service representatives or call centers on numerous occasions regarding investment or insurance products (*Id.* at ¶¶ 67-70; Doc. 57 at p. 9). Plaintiffs were residents of Illinois, located in Illinois, and used Illinois phone numbers to call John Hancock (Docs. 57-2; 57-3; 57-4). John Hancock's call centers use Amazon Connect with Pindrop biometric voiceprint authentication; as a result, they no longer require customers to have a pin number for authentication (*Id.* at ¶¶ 71-72). Plaintiffs allege that AWS and Pindrop apply their voice biometric technology to every caller to John Hancock's call centers (*Id.* at ¶ 73).

Plaintiffs' Complaint asserts five counts of BIPA violations, 740 ILL. COMP. STAT. § 14/15(a)-(e). In Count I, Plaintiffs claim that Defendants violated BIPA section 14/15(a) by possessing Plaintiffs' and Class members' biometric information, including voiceprints and related biometric information, without creating and following a written policy, made available to the public, establishing and following a retention schedule and destruction guidelines for their possession of biometric identifiers and information (*Id.* at ¶ 90). In Count II, Plaintiffs assert Defendants violated BIPA section 14/15(b) by failing to inform John Hancock's Illinois callers that their biometric information is being

collected and stored and by not obtaining any form of consent (*Id.* at ¶¶ 94-95). In Count III, Plaintiffs allege that Defendants violated BIPA section 14/15(c) by profiting from the possession of their biometric information, including their voiceprints (*Id.* at ¶ 102). Count IV alleges Defendants violated BIPA section 14/15(d) when they disclosed, redisclosed, and disseminated their biometric information, including voiceprints, without consent (*Id.* at ¶ 107). Finally, Plaintiffs claim Defendants violated BIPA section 14/15(e) by failing to use reasonable care in storing, transmitting, and protecting the biometric information from disclosure, or by failing to do so in a manner the same as or more protective than the manner in which Defendants store, transmit, and protect other confidential and sensitive information (*Id.* at ¶¶ 112-13).

> Plaintiffs seek to represent a class consisting of:
>
> All Illinois citizens who placed one or more phone calls to, or received one or more phone calls from, an entity using Amazon Connect and Pindrop's voice authentication and/or fraud detection technology, from December 17, 2014 until present.

(*Id.* at ¶ 81).

On behalf of themselves and the putative class, Plaintiffs seek an order enjoining Defendants from further violating BIPA, actual damages, statutory damages of $5,000 for each intentional and reckless violation of BIPA pursuant to 740 ILL. COMP. STAT. 14/20(2), or statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILL. COMP. STAT. 14/20(1), attorneys' fees and costs, and pre- and post-judgment interest. 740 ILL. COMP. STAT. 14/20(3). (*Id.* at pp. 26-27).

**SUBJECT MATTER JURISDICTION**

On January 8, 2020, Defendants removed the action to this Court under the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332(d)(2) (Doc. 1). CAFA extends federal jurisdiction over class actions where: (1) any member of the proposed class is a citizen of a state different from any defendant (*i.e.*, minimal diversity exists); (2) the proposed class consists of more than 100 members; and (3) the amount in controversy is $5,000,000 or more, aggregating all claims and exclusive of interest and costs. *See* 28 U.S.C. §§ 1332(d)(2), 1332(d)(5)(B).

Here, the proposed class consists of more than 100 members, as Plaintiffs allege that the putative class includes "thousands of people." (Doc. 1-1 at ¶ 82). There also is minimal diversity of citizenship between the parties. Plaintiffs are citizens of Illinois, AWS is a Delaware corporation with its principal place of business in Washington, and Pindrop is a Delaware corporation with its principal place of business in Georgia (Docs. 1, 8). Finally, CAFA's amount in controversy requirement is satisfied. At a minimum, Plaintiffs allege statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILL. COMP. STAT. 14/20(1). Plaintiffs then allege at least five separate BIPA violations in Count I-V and have asserted there are thousands of class members. Even assuming a class size of only 1,000, the Complaint alleges damages of at least $5,000,000. And when considering attorneys' fees and potential statutory damages of $5,000 for each intentional and reckless violation of BIPA, the amount in controversy well exceeds the required threshold.

## LEGAL STANDARDS

### A.     Federal Rule of Civil Procedure 12(b)(2)

When personal jurisdiction is challenged under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of establishing personal jurisdiction over a defendant. *Matlin v. Spin Master Corp.*, 921 F.3d 701, 705 (7th Cir. 2019); *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). If there are material facts in dispute regarding the Court's jurisdiction, the Court must hold an evidentiary hearing at which the plaintiff must establish jurisdiction by a preponderance of the evidence. *Purdue Research*, 338 F.3d at 782 (citing *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002)). Alternatively, the Court may decide the motion to dismiss without a hearing based on the submitted written materials so long as it resolves all factual disputes in the plaintiff's favor. *Purdue Research*, 338 F.3d at 782 (citing *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1276 (7th Cir. 1997)); *see uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 423-24 (7th Cir. 2010). If the Court consults only the written materials, the plaintiff need only make a *prima facie* showing of personal jurisdiction. *Matlin*, 921 F.3d at 701; *Purdue Research*, 338 F.3d at 782 (citing *Hyatt*, 302 F.3d at 713).

### B.     Federal Rule of Civil Procedure 12(b)(6)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is meant to "test the sufficiency of the complaint, not to decide the merits" of the case. *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990) (citation omitted). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff only needs to allege enough facts to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A plaintiff

need not plead detailed factual allegations, but must provide "more than labels and conclusions, and a formulaic recitation of the elements." *Id.* For purposes of a motion to dismiss under Rule 12(b)(6), the Court must accept all well-pleaded facts as true and draw all possible inferences in favor of the plaintiff. *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 879 (7th Cir. 2012). Taken together, the factual allegations contained within a complaint must "raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly,* 550 U.S. at 555 (internal citations omitted).

## DISCUSSION

The Court first addresses Defendants' motions to dismiss for lack of personal jurisdiction, for if the Court lacks jurisdiction, it cannot reach the motion to dismiss under Rule 12(b)(6). *See Norberg v. Shutterfly, Inc.*, 152 F. Supp. 3d 1103, 1104 (N.D. Ill. 2015). Both AWS and Pindrop contend the Class Action Complaint should be dismissed because Plaintiffs have failed to meet their burden of making a *prima facie* showing of personal jurisdiction.

"As a procedural matter, federal courts look to state law in determining the bounds of their jurisdiction over a party." *Brook v. McCormley*, 873 F.3d 549, 552 (7th Cir. 2017) (citing FED. R. CIV. P. 4(k)(1)(A)). Because the Illinois long-arm statute permits a court to exercise jurisdiction to the full extent permitted by the Due Process Clause of the Fourteenth Amendment, the state statutory and federal constitutional requirements merge. *Id.* (citing *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010)).

"The Due Process Clause of the Fourteenth Amendment limits the power of a court

to render a judgment over nonresident defendants." *Id.* at 552 (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)). Thus, personal jurisdiction is only proper if a defendant has sufficient minimum contacts with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* While the defendant's physical presence in the forum State is not required, there must be sufficient minimum contacts such that he or she "should reasonably anticipate being haled into court there." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). Personal jurisdiction can be established through general or specific jurisdiction.

General jurisdiction, or "all-purpose" jurisdiction, allows a court to hear any and all claims against foreign corporations when their "affiliations with the State [in which suit is brought] are so 'continuous and systematic' as to render them essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127, 134 S. Ct. 746, 754, 187 L. Ed. 2d 624 (2014*)* (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S.Ct. 2846, 2851 (2011)). Determining whether a corporation is "at home" in a particular state "calls for an appraisal of a corporation's activities in their entirety, nationwide and worldwide" because "[a] corporation that operates in many places can scarcely be deemed at home in all of them." *Id.* at 762 n. 20. Indeed, the Supreme Court has identified only two places where a corporation is "at home": the state of the corporation's principal place of business and the state of its incorporation. *Daimler*, 571 U.S. at 137.

"Specific" or "case-linked" jurisdiction requires an affiliation between the forum and the underlying controversy—that is, "an activity or an occurrence that takes place in

the forum State and is therefore subject to the State's regulation." *Goodyear*, 131 S.Ct. at 2851; *Brook*, 873 F.3d at 552 ("Specific jurisdiction requires a defendant's contacts with the forum State to be directly related to the conduct pertaining to the claims asserted."). Specific jurisdiction arises where an out-of-state "defendant has 'purposefully directed' his activities at residents of the forum, *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984), and the litigation results from alleged injuries that 'arise out of or relate to those activities' *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984*)." Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–73 (1985).

"The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014) (quotation omitted). "The mere fact that a defendant's conduct affects a plaintiff with connections to the forum State is not sufficient to establish jurisdiction." *Id.* Rather, the out-of-state defendant must purposefully direct its activities at residents of the forum, and the litigation must "arise out of contacts that the 'defendant *himself*' creates with the forum state." *Curry v. Revolution Labs.*, LLC, 949 F.3d 385, 396 (7th Cir. 2020) (quoting *Burger King*, 471 U.S. at 475). The defendant's relationship with the plaintiff or a third party, standing alone, is insufficient to create the necessary "minimum contacts." *Walden*, 134 S. Ct. at 1123.

A.   **Consent to Jurisdiction**

Plaintiffs first argue that AWS consented to this Court's personal jurisdiction when it asked the Court to compel discovery from Plaintiffs prior to asserting its personal jurisdiction defense. Specifically, on February 5, 2020, AWS filed a motion to permit

discovery of Plaintiffs' contact information and to compel discovery necessary to determine whether it should file a motion to compel arbitration (Doc. 32). AWS sought basic information, such as Plaintiffs' email addresses and phone numbers, to determine whether Plaintiffs had ever agreed to arbitrate as a customer of Amazon or AWS. The motion was denied (Doc. 46). Plaintiffs argue that this motion to compel discovery constituted a request for affirmative relief that waived any objection to personal jurisdiction.

In response, AWS contends that its motion only sought to compel Plaintiffs to provide basic contact information, which would be relevant for a "potential motion to compel arbitration." AWS notes that it has not served any discovery requests on Plaintiffs, nor has it sought to compel any merits discovery whatsoever. Rather, it was merely doing all it could do, as early as possible, to prevent a finding that it waived its right to arbitrate. *See Kawasaki Heavy Indus. v. Bombardier Rec. Prods.*, 660 F.3d 988, 996 (7th Cir. 2011).

"[A] personal jurisdiction defense may be waived if a defendant gives a plaintiff a reasonable expectation that he will defend the suit on the merits or where he causes the court to go to some effort that would be wasted if personal jurisdiction is subsequently found lacking." *Hedeen Int'l, LLC v. Zing Toys, Inc.*, 811 F.3d 904, 906 (7th Cir. 2016); *see also Mobile Anesthesiologists Chicago, LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.*, 623 F.3d 440, 443 (7th Cir. 2010) (defendant's request for expedited discovery to prepare for a preliminary injunction hearing did "not come close to what is required for waiver of forfeiture" of a personal jurisdiction defense). Here, however, AWS gave no indication

that it intended to defend the suit on the merits in this district court. Instead, its motion to compel discovery of information relevant to arbitration demonstrates the opposite: that AWS thought this may be the improper venue to decide Plaintiffs' claims and that it would not be litigating the merits of the claims in this Court. AWS's motion also did not cause the Court to undertake any effort that would be wasted if jurisdiction subsequently was found lacking. Accordingly, the Court finds that AWS did not waive its personal jurisdiction defense.

### B.  Specific Jurisdiction

Because Plaintiffs concede that general jurisdiction is lacking, the Court focuses its analysis on whether Defendants are subject to specific personal jurisdiction in this Court.

Pindrop argues that Plaintiffs have identified no litigation-related contacts between Pindrop and Illinois that suffice to establish specific personal jurisdiction. First, the fact that it is registered to do business in Illinois is irrelevant and fails to establish personal jurisdiction. Second, the Complaint does not allege any acts Pindrop committed in Illinois, let alone any acts committed in violation of BIPA. And finally, while Plaintiffs themselves reside in Illinois, "[t]he mere fact that a defendant's conduct affects a plaintiff with connections to the forum State is not sufficient to establish jurisdiction." *Walden*, 134 S. Ct. at 121.

In support of its motion to dismiss, Pindrop provided an affidavit from its Chief Financial Officer, Jeff Hodges, who attested that Pindrop is incorporated in Delaware, and its headquarters and principal place of business are in Atlanta, Georgia (Doc. 35-1 at ¶ 5). Pindrop does not own, lease, or operate any office, facility, or computer servers in

the State of Illinois (*Id.* at ¶ 7-8). It also does not operate or integrate with AWS or Amazon Connect in the State of Illinois (*Id.* at ¶9). While it employs three individuals who reside in Illinois, those individuals' responsibilities do not involve or relate to any conduct described in the Complaint (*Id.* at ¶¶ 12-13).

AWS also asserts specific personal jurisdiction is lacking because Plaintiffs have not alleged AWS engaged in any conduct in Illinois that is connected to Plaintiffs' claims. At most, it argues, Plaintiffs claim that non-party John Hancock directed its conduct at Illinois, and that AWS is a vendor used by that third party. Because specific jurisdiction cannot be established thorough a third party's contacts with the forum state, AWS should be dismissed for lack of jurisdiction. AWS also points to the fact that its data centers are located in Virginia, Ohio, California, and Oregon—not Illinois.

In response, Plaintiffs contend both Pindrop and AWS are subject to personal jurisdiction in Illinois because they collected, possessed, and used the voiceprints of Illinois citizens who placed calls from within Illinois and from Illinois phone numbers (Docs. 57, 62). They argue there can be no dispute that "Illinois courts have personal jurisdiction over nonresidents that reach into Illinois through phone or electronic means and commit intentional torts against Illinois residents," as Defendants did here (*Id.*). They further aver that when intentional and tortious conduct takes place during telephone communications involving a resident of the forum state and a phone number from the forum state, courts have found the non-resident defendant expressly aimed its conduct at the forum state with knowledge of its effect in the forum state.

In both cases cited by Plaintiffs, however, the defendant resisting jurisdiction was

the one that "reached into" the state to contact the plaintiff. *See Felland v. Clifton*, 682 F.3d 665, 670 (7th Cir. 2012) (defendant's "repeated communications" to plaintiff's Wisconsin home "were part of a deliberate attempt to lull him into a false sense of security and to induce him" into making installment payments); *Johnson v. Levine*, No. 09-CV-0994-MJR-DGW, 2010 WL 11565552, at *3 (S.D. Ill. Sept. 17, 2010) (defendant called plaintiff's Illinois phone number, with the knowledge that plaintiff resided in Illinois, then made material misrepresentations that induced plaintiff to take certain actions). In this case, Plaintiffs were the ones who made the call—to John Hancock—from their Illinois phone numbers. AWS then intercepted the calls once they were connected to an Amazon Connect call center and sent the audio to Pindrop for processing. The output from that processing was then returned to AWS's servers (Doc. 1-1 at ¶ 59). Nothing about this process occurred in Illinois except for the initial dialing of the phone by Plaintiffs.

Moreover, there is no indication that either of these companies purposefully directed their activities at Illinois citizens or that this litigation arises from contacts they created with Illinois. Rather, the litigation arises because John Hancock, a third party based in Massachusetts, contracted with AWS and Pindrop to analyze the voices of its customers. The fact that Plaintiffs called John Hancock from Illinois using their own Illinois phone numbers is insufficient to confer specific personal jurisdiction over the foreign Defendants. *See Salkauskaite v. Sephora USA, Inc.*, No. 18-CV-08507, 2020 WL 2796122, at *4 (N.D. Ill. May 30, 2020) (the contacts must come from the activity of the defendant, not the activity of the plaintiff or a third party).

Furthermore, according to the Complaint, AWS and Pindrop apply their voice

biometric technology to every caller to John Hancock's call centers—not just those calls initiated by Illinois residents (Doc. 1-1 at ¶ 73). The Court cannot say, then, that Defendants purposefully availed themselves of the privilege of conducting business in Illinois or directed their activities at residents of Illinois. *See Gullen v. Facebook.com, Inc.*, No. 15 C 7681, 2016 WL 245910, at *2 (N.D. Ill. Jan. 21, 2016) ("Because plaintiff does not allege that Facebook targets its alleged biometric collection activities at Illinois residents, the fact that its site is accessible to Illinois residents does not confer specific jurisdiction over Facebook.").

Since filing their briefs, both Plaintiffs and Pindrop filed motions for leave to submit supplemental authority.[1] Pindrop asks the Court to consider *Salkauskaite v. Sephora USA, Inc.*, No. 18-cv-08507, 2020 WL 2796122 (N.D. Ill. May 30, 2020), in which the plaintiff alleged that technology provided by non-resident defendant ModiFace, Inc., was used by defendant Sephora to collect plaintiff's biometric facial-geometry information at a Sephora store in Illinois. The Northern District of Illinois held that personal jurisdiction was lacking when there was no evidence ModiFace purposefully aimed its conduct at Illinois. *Salkauskaite*, 2020 WL 2796122, at *5. Rather, the use of the technology in Illinois was, at most, a fortuitous or attenuated contact that was the result of actions by Sephora, not ModiFace itself. *Id.*

Pindrop likens that factual situation to the events at issue here, in that its contacts with Illinois, at most, resulted from the decision by third party John Hancock to use

---

[1] Both motions for leave to provide supplemental authority (Docs. 60, 64) are **GRANTED**.

Pindrop's technology in its call centers. Plaintiffs disagree, arguing that *Salkauskaite* is distinguishable because Pindrop "knowingly and purposefully intercepted phone calls from Illinois residents and phone numbers to collect, possess, and profit from Illinois residents' voiceprints" and it is "well established that Illinois has jurisdiction over non-residents, such as Pindrop, who virtually reach into the state via telephonic or electronic means to commit intentional torts."

Here, however, there is no indication that Pindrop ever reached into Illinois via telephonic or electronic means to commit an intentional tort. It was Plaintiffs who made *outgoing* calls from Illinois to John Hancock call centers. The calls were then intercepted by AWS, which sent the audio to Pindrop for analysis outside of Illinois. (*See* Doc. 35-1 at ¶¶ 7-8).

Plaintiffs also ask the Court to consider *Mutnick v. Clearview AI, Inc.*, No. 20-0512, 2020 WL 4676667 (N.D. Ill. Aug. 12, 2020), as supplemental authority demonstrating this Court has jurisdiction over Defendants. In *Mutnick*, the plaintiffs alleged the defendants scraped over three billion facial images from the internet and scanned the facial images' biometric identifiers and information. *Mutnick*, 2020 WL 4676667, at *1. Defendants then built a searchable database of the scanned images, which would enable users to identify individuals by simply using a photograph. *Id.* The images contained in the databases "were uploaded and created using internet-based platforms and websites from companies in Illinois or companies who operate servers in Illinois." *Id.* Defendants sold access to the facial recognition database to numerous Illinois law enforcement and government agencies, as well as federal law enforcement agencies located in Illinois. *Id.*

Through those hundreds of agreements, defendants sold, disclosed, obtained, and profited from the biometric identifiers of Illinois citizens. *Id.* at *2. Despite this evidence, Defendants argued that personal jurisdiction was lacking because they never targeted businesses in Illinois and never traveled to Illinois. *Id.* The court rejected this argument, noting that physical presence is not necessary for a defendant to have sufficient minimum contacts with a forum state. *Id.*

Defendants do not oppose the Court's consideration of *Mutnick*, but argue the case further supports their arguments that jurisdiction is lacking here (Doc. 65). First, they argue, the defendants in *Mutnick* directly aimed their conduct at Illinois plaintiffs when they took facial images from internet-based platforms and websites from companies in Illinois or companies who operate servers in Illinois (*Id.*). They did not use a third party's contacts with Illinois to establish personal jurisdiction. Second, the defendants in *Mutnick* sold access to their database to Illinois law enforcement and government agencies in Illinois, thus directly profiting from use of the database in Illinois in violation of BIPA. In this case, however, Plaintiffs allege Defendants profited from their voiceprints in violation of Section 15(c) of BIPA through their commercial relationship with John Hancock, a Massachusetts-based company.

The Court agrees with Defendants. Unlike the defendants in *Mutnick*, there is no indication that either AWS or Pindrop specifically targeted Illinois citizens when they provided their voiceprinting services to John Hancock. Rather, Plaintiffs' voiceprints were collected because John Hancock chose to use Amazon Connect with Pindrop to analyze the voices of its customers. Because the litigation does not arise from contacts

Page 16 of 17

that Defendants themselves created with Illinois or actions purposefully directed at residents of Illinois, the Court finds that Plaintiffs have failed to make a *prima facie* showing of specific personal jurisdiction with regard to both Pindrop and AWS. Accordingly, the case must be dismissed for lack of personal jurisdiction.

## CONCLUSION

For these reasons, the motions to dismiss under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction filed by Defendants Pindrop Security, Inc. (Doc. 35) and Amazon Web Services, Inc. (Doc. 49) are **GRANTED**. Plaintiffs' individual claims against Defendants are **DISMISSED without prejudice**.

**IT IS SO ORDERED.**

DATED: September 18, 2020

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**